Statement.

## Richmond.

HENRICO COUNTY v. CITY OF RICHMOND AND OTHERS.

December 6, 1906.

1. CONSTITUTIONAL LAW—*Acts of Assembly—Doubtful Validity.*—This court, while possessing the power to declare an Act of Assembly unconstitutional, will not do so unless there is a clear violation of some explicit provision of the constitution.

2. CONSTITUTIONAL LAW—*Intermingling of Powers—Extending City Limits.*—An Act of Assembly providing for the extension of the corporate limits of cities and towns, and which confers upon the Circuit Courts of the counties in which the territory lies the power to ascertain and determine the boundaries to be embraced, and the necessity for and the expediency of extending the corporate limits of cities and towns, is not unconstitutional on the ground of conferring legislative powers on such courts. Nearly or quite all of the questions of necessity and expediency submitted to the courts for their determination are questions of fact, and are to be ascertained judicially, and the limited legislative power conferred, if any, is not in violation of the constitution. Governments could not exist if the inhibition on the intermingling of such powers in one person or body were strictly, literally, and unyieldingly applied in every situation. The manifest purpose of the Legislature was to make a case to be tried in court in which all the parties concerned are brought before the court and given an opportunity to be heard. It is in the highest sense litigation.

Error to a judgment of the Circuit Court of Henrico county, on an application to extend the limits of the city of Richmond. Judgment for petitioners.   County of Henrico assigns error.

*Modified and affirmed.*

The following is a copy of the ordinance of the city of Richmond referred to in the opinion of the court:

"An Ordinance.

"(Approved August 12, 1905.)

"To extend the corporate limits of the city of Richmond in pursuance of the provisions of the act of the General Assembly of Virginia, approved March 10, 1904, entitled 'An act to provide for the extension of the corporate limits of cities and towns.'

"Be it ordained by the Council of the city of Richmond:
"1. That the city of Richmond hereby declare that it is desirable to annex, in pursuance of the act of the General Assembly of Virginia, approved March 10, 1904 (Acts 1904, page 144), certain territory of the county of Henrico, Virginia, adjacent to the present corporate limits of the city of Richmond, in which is included the town of Fairmount, and to that end the city of Richmond doth hereby accurately describe the metes and bounds of such territory as follows:
"Beginning at the western city limits as incorporated by an act of the General Assembly, approved February 13, 1867, on the southern margin of James river; thence extending westwardly along the southern margin of James river to a point opposite the western face of the old canal lock No. 2, which point is on a straight line extending from the south bank and across James river on a course north 23 degrees 30 seconds east to a point on the southern line of Hagan's addition, in the middle of the block between Spruce and Magnolia streets; thence along the southern line of said Hagan's addition in a southeastwardly direction to the western line of Belview street; thence in a northwestwardly direction parallel with Belview street, Blanton avenue and Tabb road to a point 150 feet south

of the south line of Beverly street; thence in a westwardly direction parallel with and 150 feet south of Beverly street to a point 150 feet west of Tabb road in a northwardly direction to the north line of Beverly street; thence along a line parallel with and distant about 150 feet west of Foushee or Sheppard street to a point 150 feet south of Westham road or Cary street, continued; thence in a westwardly direction in a line parallel with and distant 150 feet south of the said Westham road or Cary street, continued, to a point 150 feet west of Crenshaw avenue; thence in a northwardly direction along a line parallel with and distant 150 feet west of Crenshaw avenue to the center of the present public alley midway of the block between Grove avenue and Hanover street; thence in an eastwardly direction along the centre line of the present public alley to a point 150 feet west of Roseneath road; thence in a northwardly direction along a line distant 150 feet west of and parallel with the said Roseneath road to a point 150 feet north of the Deep Run turnpike or Broad street, continued, to a point 150 feet west of High Point avenue; thence following northwardly this line parallel with and 150 feet west of High Point avenue to the northern line of the right of way of the Seaboard Air Line railway; thence following along the southern line of the right of way of the Seaboard Air Line railway in an eastwardly direction to a point on the extension of the northern line of the property owned by the Richmond, Fredericksburg and Potomac Railroad Company (formerly the Fair Grounds); thence in a westwardly direction along a line of the northern line of the Fair Grounds property, if projected, to the northeast line of the Richmond, Fredericksburg and Potomac Railroad Company; thence in a southwestwardly direction along the northeastern line of the right of way of the Richmond, Fredericksburg and Potomac Railroad Company to the northern line of Leigh street; thence along the northern line of to the western line of Spotswood avenue; thence in a northwardly direction along the western line of Spotswood avenue to the northern line of the

right of way of the Seaboard Air Line railway; thence in an eastwardly direction along the northern line of the right of way of the Seaboard Air Line railway to a point 150 feet east of the eastern line of Allen street; thence northwardly parallel with and 150 feet east of the eastern line of Allen street to the alley about 120 feet south of Fritz street; thence eastwardly parallel with and 150 feet south of the south line of Fritz street to the west line of Virginia street; thence northwardly along the western line of Virginia street to a point in line with the northern line of Powell street, projected, which line is about seventy-five feet south of the south line of Fritz street; thence eastwardly parallel with the northern line of Powell street to a point 150 feet west of the west line of Mitchell street or Lamb avenue; thence southwardly to the northern line of Bacon Quarter branch; thence along the northern line of said Bacon Quarter branch in an eastwardly direction to the western line of Seventh street; thence in a direct line to a point 150 feet north of the present corporation line; thence eastwardly parallel with and 150 feet north of the present corporation line to a point 150 feet east of the eastern line of Seventeenth street; thence southwardly parallel with and 150 feet east of the eastern line of Seventeenth street to a point distant 150 feet north of Fairfield avenue; thence in an eastwardly direction parallel with and 150 feet north of Fairfield avenue to a point in line with the eastern line of a 40 foot street (not named) parallel to and east of Buchanan street; thence in a southwardly direction to a point 150 feet south of Accommodation street; thence in an eastwardly direction 150 feet south of Accommodation street, extended, to a point 150 feet north of Redd street, projected; thence in a southeasterly direction parallel with and 150 feet north of Redd street to the east line of Mechanicsville turnpike; thence in a northwardly direction along the eastern line of Mechanicsville turnpike to the northern boundary line of town of Fairmount; thence in an eastwardly direction following the said northern boundary line of town of Fairmount to the center

of Twenty-second street; thence in an eastwardly direction parallel with and 150 feet north of V street to a point 150 feet east of Twenty-third street; thence in a southwardly direction parallel with and 150 feet east of Twenty-third street to a point 150 feet north of that section of T street east of Twenty-sixth street; thence in an eastwardly direction parallel with the eastern section of T street to a point 150 feet north of T street, and to a point 150 feet north of Nine Mile road; thence in an eastwardly direction parallel with and 150 feet north of the Nine Mile road to a point north 42 degrees west of the point of intersection of Thirty-first street and the Nine Mile road; thence south 42 degrees east to a point distant 250 feet north of the northern corner of the Oakwood Cemetery property and in a continuation of the straight line bounding said cemetery on the west; thence from this last mentioned point along a line parallel with and 150 feet north and east of the northern and eastern meanderings of Stony Run branch and Gillie's creek to a point on the south line of the National Cemetery road; thence along the south line of the National Cemetery road in an eastwardly direction about—to a point 750 feet east of the eastern line of Malone street; thence along a line parallel with and about 750 feet east of Malone street to a point 150 feet south of Williamsburg avenue; thence in a westwardly direction parallel with and 150 feet south of Williamsburg avenue to a point 150 feet east of the eastern line of Scott street; thence southwardly parallel with and 150 feet east of Scott street to a point 150 feet south of the southern line of Potomac street, projected; thence in a westwardly direction parallel with and 150 feet south of Potomac street to a point 150 feet west of the western line of Tenth street (Fulton); thence in a northwardly direction parallel with and 150 feet west of Tenth street (Fulton) to a point 150 feet south of Williamsburg avenue; thence in a northwardly direction, parallel with and 150 feet west of Williamsburg avenue to the present corporation line 150 feet south of Orleans street; thence following along the present eastern,

northern and western boundaries of said city to the point of beginning, the metes and bounds of which territory proposed to be annexed appear and may be traced and verified on a map on file in the office of the city engineer of the city of Richmond. (As amended by the ordinance approved August 19, 1905.)

"2. The city of Richmond doth hereby set forth the necessity for and the expediency of the proposed annexation—that is to say:

"(1) That the crowded and congested conditions at present prevailing in almost every section of the city may be relieved by adding sufficient territory to the corporate limits of the city not built upon, but adapted to city improvements, so as to afford cheap and desirable locations for the erection of commodious, healthful and beautiful residences.

"(2) That the present and prospective systems of public improvement of the city, such as the establishment of grades of streets and alleys, the plans of construction of sewers, culverts, drains, and water and gas mains, may be designed, adjusted and made, so as to avoid unnecessary annoyance and damage necessarily occurring where property is built upon and developed before such systems are designed, acquired and made.

"(3) The fact that a part of the territory proposed to be annexed is already built upon, though without any sufficient system of sewers or other improvements, makes it not only expedient, but necessary that some complete system of sewerage be promptly provided for the proper sanitation and improvement of such territory.

"(4) That within the territory proposed to be annexed there are several locations where the houses and population are more or less dense, which necessitate better police and fire protection than the county of Henrico is enabled, with the means at its command, to afford to such communities, and, as a result, it endangers the safety of life and property not only without but also within the corporate limits.

"3. The city of Richmond hereby sets forth the terms and

conditions upon which it desires to make the proposed annexation, and proposes for the future management of the annexed territory the following:

"(1) That the city of Richmond shall assume and provide for the reimbursement of the county of Henrico of a just proportion of any existing debt of said county, if any there be, and shall also make compensation to the county of Henrico for any schoolhouse or other public building of said county located within the annexed territory.

"(2) That the tax rate upon the land within the annexed territory shall not be increased beyond the rate assessed by the county of Henrico for its purposes at the time of the annexation under this ordinance for a period of five years after such annexation, except upon the petition of a majority of the freeholders of such territory presented to the council of the city of Richmond.

"(3) That all revenues derived by the city of Richmond from taxation in said territory during the first period of five years, either on property or from other sources, including licenses, shall be wholly expended by the city of Richmond upon streets, sewers, light, water and other public improvements in said territory; provided, however, that at any time within the said five years the council of the city of Richmond may, by ordinance, set apart a sum equal to twelve *per centum* of the assessed value, at the time of annexation, of the lands annexed, or of such part thereof as may be determined upon by said council, which sum so set apart shall be wholly expended in public improvements in and for the benefit of the annexed territory, or part thereof, as may be determined as aforesaid; and when said sum shall have been so set apart and said public improvements shall have been begun, the land annexed or part thereof, as aforesaid, shall be subject to city tax rate, and the proceeds thereof shall be paid into the city treasury along with all other taxes and licenses in such territory for general purposes, although said five years shall not have elapsed, provided

that said sum to be set apart and expended shall be reduced by the sum already expended on said improvements under any other plan of annexation; and provided said sum also shall be reduced by the amount of any debt of the town of Fairmount, should the said town be annexed to the said city of Richmond as a part of said territory; which, however, shall apply solely to the scheme of taxation within the territory of said town of Fairmount; and provided further, that out of the proceeds of sale of the next issue of bonds by the city of Richmond after such annexation the said sum equal to the said twelve *per centum* of the assessed value at the time of annexation of the land annexed, reduced by the sums hereinbefore mentioned, shall be set apart and expended in said territory as hereinbefore directed, unless said sum has been already so expended.

"(4) That all county levies imposed on persons and property within such territory for the current fiscal year in which said annexation is made shall be paid to the county of Henrico.

"(5) That the taxes assessed, collected and expended during the said period of five years shall be so assessed, collected and kept that the same may be expended as hereinbefore provided in the territory of the particular ward from which it was so collected until and unless a sum be set apart equal to twelve *per centum* of the assessed value at the time of annexation of the lands annexed, and when said sum shall have been so set apart, and the public improvements shall have been begun, the land annexed shall be subject to the city tax rate.

"(6) That the city of Richmond will, as soon as annexation is accomplished, afford police and fire protection and public school facilities to the citizens residing in the annexed territory; and will, with all reasonable dispatch, afford and furnish other public facilities and improvements to said citizens, as provided by law.

"(7) That in the annexed territory no new streets or alleys shall be opened or projected except with the consent and approval of the council of the city of Richmond.

"4. That the city attorney be, and he is hereby, instructed to institute ·and prosecute, with as little delay as possible, the necessary legal proceedings in order to annex to the city of Richmond, by proper decree or judgment of the Circuit Court ·of the county of Henrico, the territory hereinbefore accurately ·described, upon the terms and conditions hereinbefore set forth."

*Braxton & Williams* and *L. O. Wendenburg,* for the plaintiff in error.

*H. R. Pollard, Meredith & Cocke, Thos. W. Gardner* and *J. H. Drake, Jr.,* for defendants in error.

HARRISON, J., delivered the opinion of the Court.

The subject matter of this controversy is the extension of the corporate limits of the city of Richmond. The evidence before the Circuit Court is not in the record before us, the appellant having appealed solely upon the legal questions involved. Under these circumstances it must be assumed that the evidence was legal, and sufficient to justify the conclusion reached by the Circuit Court upon all questions of fact.

Prior to the adoption of the constitution of Virginia, which took effect on the 10th day of July, 1902, the Legislature exercised the power of passing special statutes for the enlargement of the limits of cities and towns, each act authorizing the enlargement of some particular city or town. That the Legislature had this power was determined .in *Wade* v. *City of Richmond,* 18 Gratt. 583. The recent Constitutional Convention deemed it unwise for the Legislature to exercise this power. It, therefore, declared that "the General Assembly shall provide by general laws for the extension and the contraction, from time to time, of the corporate limits of cities and towns; and no special act for such purpose shall be valid." Va. Const., 1902, Art. VIII, section 126.

Under this constitutional provision it was impossible for the Legislature to specify by general law what amount of territory should be annexed, or how much the limits of a city or town should be diminished, as the necessities of each would vary according to its size, crowded condition and financial ability. It was equally impracticable for the Legislature by general law to determine the terms and conditions upon which such extensions should be made. It therefore became a necessity that the Legislature should select and designate some agency to exercise a judgment on the facts of each case. The constitutional provision, to which we have adverted, does not limit the Legislature in selecting this agency, but it is left free to select any instrumentality not prohibited by the constitution.

In obedience to this constitutional provision, the General Assembly, by an act approved March 10, 1904, provided by general law for the extension of the corporate limits of cities and towns, selecting and designating the circuit judges of the state as the governmental agency for carrying out the provisions of the law. Acts 1904, pages 144, 148; Virginia Code, 1904, section 1014a. The first section of this act provides, among other things, "that whenever it is deemed desirable by any city or town to annex any territory to such city or town, its council shall declare by ordinance, which shall be passed by a recorded vote of a majority of all the members elected to the council, or to each branch thereof, when there are two, that it desires to annex certain territory, and shall accurately describe therein the metes and bounds of the territory proposed to be acquired and set forth the necessity for or expedience of annexation, and the terms and conditions upon which it desires to annex such territory, as well as the provisions which are made for its future management and improvement."

The petition for appeal rests its contention that the judgment of the Circuit Court should be reversed upon two grounds: First, that the annexation statute of March 10, 1904, is unconstitutional and void, because in contravention of the Bill of

Rights, which provides "that the legislative, executive and judicial departments of the state should be separate and distinct"; and is also in violation of Article III of the constitution, which provides that "except as hereinafter provided, the legislative, executive and judicial departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time." Second, that the ordinance of the city of Richmond, which was passed in pursuance of the act, is invalid because it does not comply with the law. The constitutionality of the act is manifestly the main question relied on. The entire petition for appeal is devoted to a discussion of that question, the invalidity of the ordinance being merely suggested without argument.

It is not to be denied that this court may declare an act of the General Assembly unconstitutional. It is, however, a delicate matter to hold that the legislative department of the government has transcended its powers, and it will not be done except in a case where there is a clear violation of some explicit provision of the constitution or Bill of Rights. To doubt must be to affirm.

The contention is that this annexation statute devolves upon the court the discharge of purely legislative functions; that its vice, so far as it offends against Article III of the constitution, is two-fold—(1) "That it authorizes the court not only to reject the boundaries and the terms fixed by the annexation ordinance, but it attempts to authorize the court to substitute new boundaries and new terms for those rejected"; and (2) that "it not only authorizes the court to ascertain whether the conditions and methods prescribed by the statute have been pursued in the attempted annexation, but it attempts to authorize the court to review the proceedings upon the question of the policy or expediency of the annexation, and to affirm or set aside the annexation according to the court's view of the expediency therefor, regardless of whether the conditions and

methods prescribed by the statute have been pursued by the subordinate legislative body attempting to effect the annexation or not, thus requiring a judicial tribunal to pass upon a purely political question involving only considerations of policy and statescraft."

This is the second case that we have been called upon to consider at this term involving a construction of the constitutional provision here relied on. The first was *Winchester & Strasburg R. Co. et al.* v. *Commonwealth, ante,* page 264, 55 S. E. 692, on appeal from the State Corporation Commission. In that case it was contended that the Corporation Commission was an invalid and illegal tribunal, because the constitutional and legislative enactments which created it had concentrated in the Commission legislative, executive and judicial powers in violation of the Bill of Rights and Article III of the constitution. In disposing of this contention adversely to those making it, this court said that the administration of the government would be wholly impracticable if the general maxim relied on were strictly, literally and unyieldingly applied in every situation; that the Federal government as well as the several state governments abounded with illustrations of the intermingling of such powers in one person or body; that experience has shown that no government could be maintained where an unqualified adherence to that maxim was enforced; that the universal construction of the maxim in practice had been that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments, but that either department may exercise the powers of the other to a limited extent; and that this practical construction of the maxim had been repeatedly recognized with approval by the Supreme Court. For a fuller discussion of the subject and the authorities cited, see the opinion in the case of *Winchester & Strasburg R. Co.* v. *Commonwealth, supra,* decided at this term.

In that case, it is true, the Corporation Commission was

created by the organic law, but the authorities there cited applied to cases where the commingling of two or more of these powers was accomplished by legislative enactment only.   These cases show that the construction put by the appellant, in the case at bar, upon the constitutional separation of the departments of government is too narrow, and has been very generally rejected.

Duties are devolved upon the court by this statute which if segregated and taken by themselves would be technically legislative in their character, but, when the whole statute is read together and its purpose considered, it does not impose upon the court purely legislative functions, such as would make it obnoxious to the constitutional provision invoked.   It seems to be admitted by the learned counsel for the appellant that the annexation of territory to a municipality, under general laws, involves both legislative and judicial questions; and yet it is contended that the legislature should have designated some subordinate legislative body to carry out the provisions of the act, in which case we would have had a legislative body discharging judicial functions.

The initiative in the proceeding provided for by this statute is taken either by the municipality to enlarge its limits, or by those representing the outlying territory, to have the corporate limits extended to them.   Like the move to open a new road, it nearly always inaugurates controversy, and often a bitter contest. To determine such a controversy there could be no safer or more competent tribunal to ascertain the facts and give judgment in the premises than the courts, although in doing so there would necessarily be determined some questions which were legislative in their character.

Nearly, if not all, of the questions to be determined under the provisions of this act are questions of fact.   The power so much inveighed against in the court to determine the necessity for or expediency of annexation is controlled by the existence of facts and circumstances justifying action.   The necessity for or expediency of enlargement is determined by the health of the community; its size, its crowded condition, its past growth, and the

need in the reasonably near future for development and expansion.   These are matters of fact, and when they so exist as to satisfy the judicial mind of the necessity for or expediency of annexation, then, in accordance with the provisions of the act, the same must be declared. . It is manifest that the legislature, carrying out the provisions of the constitution, intended, as doubtless did the enactors of the organic law, to require that every annexation should depend upon evidence showing the necessity for or expediency of annexation, that the terms proposed are reasonable and fair, and the provisions for future management of the territory just.

The legislature of this state has never given to the constitutional provision, here invoked, the restrictive meaning contended for by the appellant.   On the contrary, it has always conferred upon the courts of the commonwealth a jurisdiction involving a mingling of powers, some of which are quite as legislative in their character as those conferred by the act under consideration.   Many statutes might be referred to showing such instances, but a few only need be mentioned as illustrative of others.

For years in this state the power to levy taxes was conferred upon the old county courts.   Until the establishment of the Corporation Commission the Virginia courts had the power to grant or refuse charters of private corporations, fixing their terms, or amending or modifying the same, possessing the fullest power of creation as well as limitation.   For years in this state it has been to the judicial department that the Legislature has delegated the power to determine the opening or closing of the highways in the counties; and until the constitution of 1849-'50 the Legislature exercised the power of granting divorces and other acts of a judicial character.   This legislative construction of the constitution is entitled to no inconsiderable weight, and cannot be lightly set aside.   Cooley on Const. Lim. (4th Ed.), pages 81, 83; *Murray's Lessee, &c.,* v. *Hoboken L. & I. Co.,* 18 Howard 272, 279, 15 L. Ed. 372; *United States* v. *Hill,* 120

U. S. 169, 180, 30 L. Ed. 627, 7 Sup. Ct. 510; *Day* v. *Roberts,* 101 Va. 248, 43 S. E. 362.

This court has recognized with approval this legislative construction of the constitution. If there is any sovereign power universally recognized as legislative in its character it is the power to levy taxes; and yet this court has held that the General Assembly had power to confer upon the county courts authority to levy taxes for local purposes. *In re County Levy,* 5 Call 139; *Harrison Justices* v. *Holland,* 3 Gratt. 247; *Gilkeson* v. *Frederick Justices,* 13 Gratt. 577, 583.

In the case of *Bull* v. *Read,* 13 Gratt. 78, an act of the Legislature which authorized any district of the county of Accomac to determine by a majority vote whether it would accept the terms of the statute for the establishment of free schools was attacked as unconstitutional and void because the General Assembly, instead of exercising the legislative power exclusively vested in it by the constitution, and enacting the law, had referred it to a vote of the people and made its existence as a law depend upon the vote of the people. The statute was upheld, the court saying that "there was a plain distinction between the act to be done by the voters and the legislative function." Citing among other cases *Commonwealth* v. *Quarter Sessions,* 8 Pa. 391. In this Pennsylvania case the question involved was similar to that in the case at bar. The Supreme Court of that state, on page 395, says: "But the erection of a township or the creation of a new district for merely municipal purposes or convenience in the transaction of public business is in no degree similar to the exercise of the law-making power. The one is the exercise of sovereignty, the other, in its very nature a subordinate function. The latter, like the laying out of a public road or highway, or the erection of a bridge, may require the exercise of judgment and skill, but there is nothing either in the positive provisions of our constitution, or the genius of our institutions, which prohibits the action of other than legislative bodies. . . . So, too, the courts, acting through commissioners, are vested with the right to erect new townships

and divide old ones. No one has ever doubted the constitutional right of the Legislature to authorize the exercise of both these jurisdictions by the courts, because it has never been imagined that it bore any resemblance to the power of enacting laws."

In *Ex Parte Bassett,* 90 Va. 679, 19 S. E. 453, sec. 97 of the Code, which authorized the county court to appoint additional justices to the number specified in the constitution, whenever the court should be of opinion that the public service required a greater number of justices, was assailed as an unwarranted delegation of power to the county courts and in violation of the second article of the constitution, which declares that "the legislative, executive and judiciary departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others." The constitution provided that there should be elected for each district of a county one supervisor, three justices of the peace, one constable, and one overseer of the poor, who should hold their respective offices for the term of two years; the fourth section providing that nothing in the article should be construed as prohibiting the General Assembly from providing by law for any additional officers in any county. Judge Lewis, delivering the opinion of the court, says: "The constitution, it will be observed, does not prescribe the manner in which additional officers shall be provided for, but leaves that to the discretion of the Legislature." And further says: "There is here no delegation of legislative power, but the county courts are merely empowered to declare the event, so to speak, upon which the act is to take effect within their respective counties." After citing Cooley on Const. Lim., 119, as to the power of the Legislature to delegate to the voters questions involving the expediency of changing municipal limits, the learned judge says: "The same principle applies to the present case; for if it be competent for the Legislature to submit a matter of local concern to the decision of the voters of the municipality it is equally competent for it to submit a similar question to the decision or approval of the county courts."

There has been no case before this court where the constitutional question under consideration arose in a case involving the annexation of additional territory to a city. Many such cases have arisen, however, in our sister states, where statutes similar to ours have been upheld.

In *City of Wahoo* v. *Dickenson,* 23 Neb. 416, 36 N. W. 813, the statute involved provided for filing with the court a petition setting forth the benefits to be derived and a plat of the territory desired; it provided for a trial, and declared that if the court find the allegations of the petition to be true and that such territory or any part thereof would receive material benefit by its annexation to such corporation, or that justice and equity require such annexation of the territory or any part thereof, a decree shall be entered accordingly. In holding this act valid the Supreme Court said, on page 730: "We do not understand the statute, however, as clothing the courts with power to legislate in the premises—that is, to determine in the first instance what territory should be annexed. This power is bestowed upon the city council. The evident purpose is to protect the owners of property from being forcibly brought within the corporation, unless one or two facts are made to appear. First, that the territory, or a part of it, will receive material benefit from its annexation to such corporation—that is, after all the territory sought to be annexed will receive material benefits, then a decree will be entered accordingly; if but part receives material benefit, then a decree will be entered only for such part. Second, where justice and equity require such annexation of said territory, or a part thereof, then a decree will be entered according to the facts found. The determination of these questions is a judicial act, and the courts are duly empowered and the question is proper for the courts to consider." The act involved in this case was a general law, the constitution of Nebraska prohibiting special legislation as applied to any particular municipal corporation.

It would unnecessarily prolong this opinion to quote at length

from many other cases which are quite as pertinent as the Ne-
braska case. See *Forsythe* v. *City of Hammond,* 142 Ind. 505,
40 N. E. 267, 41 N. E. 950, 30 L. R. A. 576, 68 Fed. 774;
*Paul* v. *Town of Walkerton,* 150 Ind. 565, 50 N. E. 725; *Kelly*
v. *Meeks,* 87 Mo. 396; *City of Burlington* v. *Lubrick,* 43 Ia.
252; *Callen* v. *Junction City,* 43 Kan. 627, 23 Pac. 652, 7 L.
R. A. 736; *City of Jackson* v. *Whiting,* 84 Miss. 163, 36 South.
611; *Foreman* v. *Town of Marianna,* 43 Ark. 324; *People* v.
*Fleming,* 10 Col. 553, 557, 16 Pac. 298; *Morton* v. *Woodford,*
99 Ky. 367, 35 S. W. 1112.

Many authorities are cited by the learned counsel for the·
appellant in support of the contention that the act in question is
invalid. In most, if not all, of these cases, there was no con-
stitutional provision requiring a general law providing for the·
extension of corporate limits, and most of them refer· to the·
original incorporation of cities and towns. There is undoubt-
edly some conflict in the authorities. This conflict seems, how-
ever, to arise out of the differences in the terms and conditions·
of the several statutes, the scope and purpose of each, and the·
judicial view as to the character of the questions relegated to the·
courts in each case.

In the case at bar the manifest purpose of the act was to·
make the matter of enlarging the corporate limits of a city or·
town a case to be tried in court. It is in the highest sense litiga-
tion. Those in favor of the extension and those opposed to it
each have rights that should be considered and respected. The·
act prescribed a method of procedure by which all the parties·
concerned are brought before a court of competent jurisdiction,
which it declares "shall hear the case upon evidence introduced
in the manner in which evidence is introduced in common law
cases." The policy of annexation as a public necessity was de-
termined by the Legislature when it enacted this statute pro-
viding for its accomplishment when certain conditions were
shown to exist. The court is called upon by the statute to express
no opinion as to its wisdom as a matter of public policy. It has

·only to determine, upon the evidence adduced, the rights of the opposing parties in the particular case before it; whether, upon the facts and circumstances established by the evidence, the ·city is entitled to any extension at all, and if any, how much, and the terms and conditions upon which such extension shall be granted.  The power that is devolved upon the court by this statute is not an authority to make laws, and is no greater power than that which, in the evolution of law, society has found it necessary to relegate to the courts in many other instances; and there is as little danger of such power being abused in this instance as in any other.

These considerations lead us to the conclusion that the act here called in question, so far as its validity is involved in this appeal, is not invalid because in conflict with the constitutional provision relating to the separation of the powers of government.

We are further of opinion that the objection to the ordinance is untenable.  The ordinance of the city of Richmond, which is the foundation of this proceeding, substantially complies with the statute, and sets forth the case of the city with as much fullness and detail as was practicable under the circumstances.

The order appealed from provides that the annexation therein determined upon shall take effect the day of its entry, February 17, 1906.  The suspension of that order during the pendency of this appeal makes it necessary, in order to avoid confusion, to change the time at which the annexation shall take effect.  It will therefore be provided by this court that the annexation shall take effect from the date of its final order.  Subject to this modification the judgment of the Circuit Court must be affirmed.

BUCHANAN, J. (dissenting):

I am unable to concur in the opinion of the court.  The act of the Legislature, whose validity is attacked in this case, con-

fers upon the courts the power to ascertain and determine the necessity for or expediency of extending the corporate limits of cities and towns. That power it was held by this court in. *Wade* v. *City of Richmond,* 18 Gratt. 620, was a purely legislative power or function, and that decision is in accord with the great weight of authority.

Section 5, Article I, of the constitution declares: "That the legislative, executive and judicial departments of the state should be separate." Article III of the constitution provides that "Except as hereinafter provided, the legislative, executive and judicial departments shall be separate and distinct, so that neither exercise the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time."

The constitution does provide in certain cases for the exercise of the power of more than one of the departments of government by the same person or tribunal, notably in the case of the State Corporation Commission. But it contains no provision which confers upon or authorizes the legislature to delegate to the courts the legislative power or function of ascertaining and determining the necessity for or the expediency of extending the corporate limits of cities and towns. This being so, it seems clear to me that the act in question is in plain violation of the constitution; and for that reason the judgment complained of should be reversed.

*Modified and affirmed.*