# Richmond

## THE TOWN OF FALLS CHURCH, AND OTHERS v. THE COUNTY BOARD OF ARLINGTON COUNTY, AND OTHERS.

March 12, 1936.

Present, Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*John S. Barbour*, for the plaintiffs in error.

*Thomas W. Phillips* and *Lawrence W. Douglas,* for the defendants in error.

HUDGINS, J., delivered the opinion of the court.

Ninety-one of the one hundred and twenty-three qualified voters, residing in that part of the town of Falls Church lying in Arlington county, filed a petition in the circuit court of the county, praying that that part of the town lying wholly within Arlington county be excluded from the corporate limits of the town. The county board of Arlington, and the mayor of the town of Falls Church were duly summoned to answer the petition. The former appeared and joined in the prayer. The latter appeared and filed a demurrer and answer to the petition. The town of Falls Church, in its own name, the board of school trustees of the town of Falls church, and twenty-four citizens residing in that part of the town lying in Fairfax county, intervened as parties to the proceedings. After a full hearing the trial court entered an order granting the prayer of the petition, and from that order, this writ of error was allowed to the mayor, the town of Falls Church, and other intervenors.

The first assignment of error is to the action of the court in overruling the demurrer. This assignment raises the question of the constitutionality of chapter 216, p. 310, of the act approved March 16, 1920, Michie's Code, section 2971 (1), under which the proceedings were instituted and conducted. The reasons assigned for the unconstitutionality of the act are as follows: (1) The enactment of the statute contravenes section 52 of the Virginia Constitution; (2) The provisions of the act invoking the jurisdiction of the court constitute an election, which is violative of sections 27, 28, and 63 (11), of the Constitution, prescribing the method of holding elections by the people; (3) The act contravenes sections 63, 64, 65, and 126, of the Constitution regarding special, local and private legislation; (4) The provisions of the act delegate to the judiciary

legislative functions which contravene section 39 of the Virginia Constitution; and (5) that it violates both section 11 of the Virginia Bill of Rights, and the Fourteenth Amendment to the Constitution of the United States.

. Taking up these rather formidable contentions, in the order named, we turn to section 52 of the Virginia Constitution, which reads; "No law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended with reference to its title; but the act revived or the section amended shall be reenacted and published at length."

The title to the act, which plaintiff in error contends does not comply with this constitutional requirement, is thus: "An act to provide for the contraction of the corporate limits of towns located partially in one county and partially in another." (Acts 1920, ch. 216).

' While it is conceded that the provisions set forth in the body of the act are germane to the title, the contention is that the act amends Code, sections 2969, 2970, and 2971. The provisions of these sections deal with the question of the contraction of the corporate limits of municipalities when the proceedings are instituted by the corporate authorities, but contain no provision for the determination of the question, when the citizens residing in the area to be excluded desire to initiate proceedings for that purpose. Not a single provision in any of the sections cited was enlarged or diminished by the act of March 16, 1920. This act gives to the majority of the citizens residing in the area proposed to be eliminated from the corporate limits of a town, the right to institute proceedings for that purpose. It provides how the proceedings shall be instituted and conducted, and the facts to be determined by the court before granting the prayer of the petition. As this phase of the subject was not covered by the existing law, there was no necessity to revive or amend any statute by title or otherwise. The facts presented by this record reveal a much stronger case than those presented in *Narrows* v. *Board of Supervisors of*

*Giles County,* 128 Va. 572, 105 S. E. 82, which this court held to be a sufficient compliance with these constitutional provisions.

■ (2) The provision of the act in question, requiring that the petition be signed by a majority of the qualified voters residing in the area to be excluded, is not an election by the people in the sense that the term is used in the Constitution. The signing and the filing of the petition by the required number of voters is not the final determination of the question of the exclusion of the area, or the contraction of the corporate limits; it is simply one of the essential requirements, which must be met before the court is authorized to proceed with the hearing. But even if the provision should be construed as an election, it is not such an election over which the powers of the legislature are restrained by constitutional inhibition. This question was determined by this court in *Willis* v. *Kalmbach,* 109 Va. 475, 64 S. E. 342, 21 L. R. A. (N. S.) 1009. While Judge Harrison filed a vigorous dissent in that case, which is made the basis of the plaintiff in error's argument in this case, the views of the majority opinion have become the settled law of this Commonwealth, and we see no reason to disturb the conclusions therein reached.

■ (3) The act is general, and applies to all towns within the Commonwealth similarly situated. It only purports to affect towns, the corporate limits of which lie partly in one and partly in another county. Towns, as distinguished from cities, when incorporated, still remain a part of the county or counties embraced within its corporate limits. While these corporate limits may extend across county lines, and include citizens of two or more counties, the citizens still remain subject to the governing body of the county within which they reside. The valuation of real estate and tangible personal property located within a town, is fixed for the purpose of taxation, by the officers of the county and not by municipal authorities. The citizens of all towns pay taxes for the support of the municipality, and taxes for the support of the government

of the county in which they reside. While the rate of the municipal tax is the same, the valuations of the properties, for taxable purposes, vary in the different counties; hence citizens on one side of the county boundary line may have their property assessed at its full market value, and citizens on the other side of the county line, but within the corporate limits of the town, may have their property assessed at sixty per cent of its market value. In such an event citizens of the same town, but citizens of different counties will not pay a uniform tax to the municipality, though the tax will be uniform in so far as the county in which they reside is concerned. There are other peculiar circumstances applicable only to citizens and inhabitants of this class of towns.

Necessarily the legislature exercises a wide discretion in the determination of classifications as a basis for legislative enactments. In *Bryce* v. *Gillespie,* 160 Va. 137, 146, 168 S. E. 653, 656, we said: "The wisdom of its legislation is not the concern of the courts. It is the duty of the courts to sustain the constitutionality of an act in all doubtful cases. An act is not invalid if within the sphere of its operation all persons subject to it are 'treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.' "

In *Ex parte Settle,* 114 Va. 715, 718, 77 S. E. 496, 497, this is said: "But the fact that a law applies only to certain territorial districts does not render it unconstitutional, provided it applies to all districts and all persons who are similarly situated, and to all parts of the State where like conditions exist. Laws may be made to apply to a class only, and that class may be in point of fact a small one, provided the classification itself be a reasonable and not an arbitrary one, and the law be made to apply to all persons belonging to the class without distinction." See *Martin's Ex'rs* v. *Commonwealth,* 126 Va. 603, 102 S. E. 77, 724; *Franklin, etc., Ry. Co.* v. *Shoemaker,* 156 Va. 619, 159 S. E. 100; *State ex rel. Welsh* v. *Darling,* 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218.

■ It is also contended that the act amends Code, sections 6336 and 6337, in that it limits the time to sixty days in which a party may apply to this court for a writ of error and supersedeas. The legislature had the power to deny to litigants any review of the proceedings by this court. In controversies arising under the workmen's compensation act, the time in which to apply to this court for writs of error from final orders of the Industrial Commission is limited to thirty days. See Code, section 1887 (61). So far as we are advised the validity of this provision of the workmen's compensation act has never been questioned. See *Stonega Coke & Coal Co.* v. *Sutherland,* 136 Va. 489, 118 S. E. 133.

■ (4) The next contention is that the act of March 16, 1920, is objectionable because it contravenes the provisions of section 39 of the Constitution, in that it delegates to the courts functions which are distinctly legislative or executive. Section 126 of the Constitution declares that "The General Assembly shall provide by general laws for the extension and the contraction, from time to time, of the corporate limits of cities and towns; and no special act for such purpose shall be valid."

In performing the duty imposed by this section the legislature adopted certain statutes, now Code sections 2956-2971, inclusive. The constitutionality of the different provisions of these sections have been sustained in several Virginia cases. *Winchester, etc., R. Co.* v. *Commonwealth,* 106 Va. 264, 55 S. E. 692; *Henrico County* v. *Richmond,* 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001; *Alexandria* v. *Alexandria County,* 117 Va. 230, 84 S. E. 630; *Warwick County* v. *Newport News,* 120 Va. 177, 90 S. E. 644; *Norfolk County* v. *Portsmouth,* 124 Va. 639, 98 S. E. 755. In each of the above cases the question presented was the extension of the corporate limits, and the proceedings were initiated by the municipality.

In *Norfolk County* v. *Duke,* 113 Va. 94, 73 S. E. 456, the proceedings were instituted by twenty or more residents of a thickly settled community, who desired to be incor-

porated as a town under the provisions of chapter 308 of the Acts of 1908. By that act the legislature delegated to the court the function of ascertaining: (1) Whether the proposed incorporation was for the interest of the inhabitants of the proposed town; (2) whether the general good of the community would be promoted by the incorporation; (3) whether or not the prayer of the petition was reasonable; and (4) determining the boundaries of the proposed town.

In passing upon the same constitutional objections raised to that act (which are practically the same objections presented to the act under review), Judge Keith, speaking for the court, said, 113 Va. 94, at page 96, 73 S. E. 456, 457: "This general subject was before this court in *Henrico County* v. *Richmond,* 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001. That, it is true, was a case involving the constitutionality of an act authorizing the annexation of territory to an existing municipal corporation."

The opinion then proceeds to recite the different conditions prescribed by the legislature, which the court must find to exist before it could judicially determine whether or not the corporate limits of any municipality should be extended. Then continuing, the court said:

"When the legislature came to deal with the duty imposed by that section (126), it passed an act which is to be found in the Code of 1904 as section 1014a. It imposes upon the courts substantially the same duties that they are required to exercise under the act called in question in the controversy before us.

"The constitutionality of section 1014a was vigorously attacked upon arguments almost identical with those under consideration, and enforced by substantially the same line of authorities, though the industry of counsel in the case before us has added to the number."

In *Nexsen* v. *Board of Supervisors,* 142 Va. 313, 321, 128 S. E. 570, 572, the proceedings were instituted by fifty-one per cent of the qualified voters residing in the territory adjacent to the city of Newport News, seeking to annex

certain territory adjacent to that city. The trial court dismissed the petition, because it involved territory embraced in the incorporated town of Kecoughtan, together with some other territory adjacent to the town, but not directly adjacent to the city. In an opinion delivered by Judge Prentis, it was held that the court had jurisdiction to hear the case on its merits, notwithstanding the fact that the territory sought to be annexed included an incorporated town, and in dealing with a cross-error said: "Where the initiative is by the city or town, the ordinance must precede the filing of the petition, but we find nothing in the statute which would justify us in holding that such an ordinance must be passed before the filing of the petition when the initiative is taken, as it is here, by fifty-one per cent of the voters in the territory involved. To us it seems simply a question of the practical application of the statute. As we have indicated, the General Assembly intended to cover the entire subject. We think that it has done so, and that in this case the procedure is sufficient to present the case to the trial court for a hearing upon the merits."

Here, as in the two cases last cited, the proceedings were initiated by the filing of a petition signed by a majority of the qualified voters residing in the territory to be affected. The court must determine before the prayer of the petition is granted: (1) That it will be to the interest of the majority of the people residing in the territory proposed to be stricken off, and (2) the general good of the community will not be materially affected. The same process of reasoning set forth in the cases heretofore cited, lead inevitably to the same results in construing the act of March 16, 1920.

(5) The final objection to the constitutionality of the act is stated thus: It "violates both section 11 of the Virginia Bill of Rights, and the Fourteenth Amendment of the Constitution of the United States, 'that no person shall be deprived of his property without due process of law,' and prohibits the impairment of the obligations of con-

tracts in violation of section 10, article I of the Constitution of the United States, which provides that no State shall pass any law impairing the obligations of contracts."

The argument under this assignment is rather long, and somewhat confusing. A large number of cases are cited dealing with property rights of corporations, and private rights of individuals, but they are not controlling on the question here involved. A municipality derives all of its powers from the State. It is a political subdivision of the State, organized under its charter for a convenient administration of public affairs within a certain definite area. But the granting of a charter by a State to a political subdivision does not create a contractual relation between the municipality and the State. "* * * The general rule is that since a municipal corporation is merely a governmental agency, legislation regulating or affecting such a corporation does not amount to a contract with the corporation, the obligation of which cannot be impaired by modifying or repealing the legislation in question without violation of the provisions of the Constitution of the United States prohibiting the impairment of the obligation of contracts." 19 R. C. L. 731.

In *Hunter* v. *Pittsburgh*, 207 U. S. 161, 178, 28 S. Ct. 40, 46, 52 L. Ed. 151, this is said: "The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or part of it with another municipality, repeal the charter and destroy the corpora-

tion. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the State Constitution, may do as it will, unrestrained by any provision of the Constitution of the United States. * * * The power is in the State and those who legislate for the State are alone responsible for any unjust or oppressive exercise of it."

In *Trenton* v. *State of New Jersey,* 262 U. S. 182, 188, 43 S. Ct. 534, 537, 67 L. Ed. 937, 29 A. L. R. 1471, the court quoted the above and reviewed a number of other cases on the subject, and then said: "In none of these cases was any power, right, or property of a city or other political subdivision held to be protected by the Contract Clause or the Fourteenth Amendment."

Judge Cooley, in his work on Constitutional Limitations (5th Ed.), at page 292, said:

"When the municipal divisions of the territory of the State are changed in their boundaries, two or more consolidated in one, or one subdivided, it is conceded that the legislature possesses the power to make such disposition of the corporate property as natural equity would require in view of the altered condition of things. The fact that a portion of the citizens, before entitled to the benefits springing from the use of specific property for public purposes, will now be deprived of that benefit, cannot affect the validity of the legislative act, which is supposed in some other way to compensate them for the incidental loss. And in many other cases the legislature properly exercises a similar power of control in respect to the corporate property, and may direct its partition and appropriation, in order to accommodate most justly and effectually, in view of new circumstances, the purposes for which it was acquired.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

. "Nevertheless if the corporate powers should be repealed, the corporate ownership would necessarily cease,

and even when not repealed, a modification of those powers, or a change in corporate bounds, might seriously affect, if not altogether divest, the rights of individual corporators, so far as they can be said to have any rights in public property. And in other ways, incidentally as well as by direct intervention, the State may exercise authority and control over the disposition and use of corporate property, according to the legislative view of what is proper for the public interest and just to the corporators, subject, however, to this restriction, that the purpose for which the property was originally acquired shall be kept in view, so far as the circumstances will admit, in any disposition that may be made of it."

Under this assignment it is contended that the courts are authorized to contract the corporate limits of towns without giving the towns notice of the proceedings, or making them a party thereto by service of process or otherwise. The act provides: (1) That a copy of the petition shall be served on the board of supervisors of the counties affected; (2) that the petition shall be published in some newspaper, published in the county or town, once a week for four successive weeks; (3) that a copy of the petition shall be posted at the front door of the court house for a like period; (4) that a summons shall be served upon the board of supervisors of the county and the mayor of the town, to appear and answer the petition; (5) that any one or more residents or freeholders of the territory to be stricken off, may intervene and show reasons why the corporate limits should not be contracted; and (6) that any one or more of the petitioners, or defendants, or any inhabitants of said town, who may feel themselves aggrieved by any order of the trial court, are given the right to apply to this court for a writ of error and supersedeas.

The extension or contraction of municipal corporate limits prior to the adoption of the present constitution was a legislative function. See *Town of Strasburg* v. *Chandler*, 124 Va. 91, 97 S. E. 313. Hence, no notice of any

kind was essential. The provision of section 126 of the Constitution (unchanged by the 1928 amendment) restricts the exercise of the legislative power only to the extent of requiring that the power be exercised by a general law. The act of March 16, 1920, in addition to requiring the posting and publication of notice, provides that notice be served on the mayor, the chief executive officer of the town, and the members of the board of supervisors of the county affected. In the brief for plaintiffs in error it is virtually conceded that if the mandates of the act regarding notice were obeyed, knowledge of the pendency of the proceedings would be known to the town. But it is contended that because the statute does not state expressly that the town may appear in its own name, it violates the due process clause in both the State and the Federal Constitutions. The tenor of the whole act is that the county through its board of supervisors, and the town through its mayor, its chief executive officer, not only should, but must be summoned to answer the petition. It is not the mayor or members of the board of supervisors, as citizens; it is the mayor and board of supervisors as representatives of the town and county, who must be summoned to appear on the day fixed by the court, and an opportunity thus given the town and county, through the representatives named, to oppose the contraction of the corporate limits, or any other matter which may be determined in the proceedings. This is a right given the town and county by the act, and not a matter of grace which the trial court may or may not extend.

The service, the posting, and the publication of notice of the proceedings, are very similar to the notice and summons required under the statutes heretofore mentioned, when the proceedings for the extension or contraction of the corporate limits are instituted by the municipal authorities, and those in which the proceedings are instituted by parties desiring to obtain a charter for a town from the courts.

As heretofore stated, counsel has strenuously urged that

the act in question is invalid because it varies from, or amends, section 2970, the enactment which they concede is a proper exercise of legislative power. That part of section 2970, authorizing the county affected to defend similar proceedings instituted by a municipality, reads thus: "One or more residents or freeholders of the territory proposed to be stricken off, or the attorney for the Commonwealth of the county or counties contiguous thereto, may appear and by petition set forth reasons why the corporate limits should not be reduced."

It is thus seen that the county affected is not in express terms authorized to appear in its own name, but it is authorized to appear and defend the action in the name of the Commonwealth's attorney. The act of March 16, 1920, does conform in this particular to section 2970. The provisions challenged do not violate the due process clauses of either the State or Federal Constitutions.

A discussion of the three remaining assignments of error would necessitate a detailed analysis of the evidence and would serve no useful purpose. We deem it sufficient to say that we have examined each, and find no reversible error in the judgment of the trial court.

*Affirmed.*