66  133
70  473

</div>

HENRY I. BUDD, STATE COMMISSIONER OF PUBLIC ROADS, RELATOR, v. WILLIAM S. HANCOCK, COMPTROLLER, &c., AND GEORGE B. SWAIN, TREASURER OF THE STATE OF NEW JERSEY.

Submitted November 8, 1900—Decided February 25, 1901.

1. A law is special in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate.

2. Legislation that operates upon an object whose characteristics are so distinct as reasonably to form, as regards the subject legislated upon, a class by itself, is not objectionable merely because the class is composed of but a single object.

3. The legislature is not forbidden by the constitution from increasing or decreasing the allowance of the state commissioner of public roads during the term of office of the incumbent by an act that affects this public office alone; such an act, owing to the unclassifiable nature of its object, is a general and not a special law.

4. The case of *State* v. *Kelsey,* 15 *Vroom* 1, distinguished.

On rule to show cause why a *mandamus* should not issue.

The following statement of the facts of the case is taken from the brief of the attorney-general:

"The relator held the office of commissioner of public roads. There is no other office of like character in the state. He was commissioned May 21st, 1895, under an *ad interim* appointment. He was again commissioned March 26th, 1896, for a term of three years, which expired March 26th, 1899, and on March 26th, 1899, he was commissioned for the third time for a term ending March 26th, 1902. On the 23d of March, 1900, an act was passed (*Pamph. L., p.* 386, *ch.* 155) entitled 'An act to amend an act entitled "An act giving the state commissioner of public roads a fixed salary instead of per diem pay, and limiting the expenses connected with the office," approved March 25th, 1896, and all amendments thereto.' By this act it was provided as follows:

"1. The first section of said act shall be amended so as to read as follows:

"1. The annual salary of the state commissioner of public roads shall be twenty-five hundred dollars, and he shall be allowed the sum of fifteen hundred dollars per year, or so much thereof as shall be necessary, for clerk hire, attorney and consulting engineer fees, stationery and actual traveling expenses.

"2. He shall be allowed the sum of one thousand dollars per year for the employment of supervisor to assist him in supervising construction and performing such other duties as necessity may require.

"The third section was a repealer of inconsistent acts, and contained a declaration that the law should take effect immediately.

"It will be seen that this act was passed during the term of the road commissioner, which began March 26th, 1899, that being the date of his commission, and expires March 26th, 1902. This proceeding is instituted for the purpose of compelling the respondents to pay the amount of increased salary provided by the act of 1900, and it is alleged that the

act in question is constitutional, and therefore the relator is entitled to the relief sought. It is conceded that if the act be constitutional he is entitled to be paid this additional salary. The pertinent provision of the constitution is one of those amendments introduced in 1874, and is to be found in section 7, paragraph 11, and is as follows: 'The legislature shall not pass private, local or special laws in any of the following enumerated cases. * * * Creating, increasing or decreasing the percentage or allowance of public officers during the term for which said officers were elected or appointed.'

"The question in the case is whether the act of the legislature increasing the allowance of the state commissioner of public roads during his term of office is a special law."

Before Justices GARRISON and GARRETSON.

For the motion, *Henry I. Budd, Jr.*

*Contra, Samuel H. Grey,* attorney-general.

The opinion of the court was delivered by

GARRISON, J. What constitutes a special law within the meaning of the amended constitution has been repeatedly adjudicated.

A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained the law is general. Within this distinction between a special and a general law the question in every case is whether any appropriate object is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legitimate classification of its objects it is a general law. Hence, if the object of a law have characteristics so distinct as reasonably to form, for the

purpose legislated upon, a class by itself, the law is general, notwithstanding it operates upon a single object only; for a law is not general because it operates upon every person in the state, but because every person that can be brought within its predicament becomes subject to its operation. Upon this branch of the case the dissenting opinion of Mr. Justice Magie, in *State* v. *Kelsey, 15 Vroom* 1, seems to me to state the correct legal rule.

In the present case, in view of the admitted fact that there is no other officer in the state of like character to that upon which the law in question operates, it is obvious that the law excludes no object to which its provisions are appropriate, unless it be maintained that the salary of no state officer can be increased unless, by the same law, the salary of every other state officer is likewise increased. If any system of classification can be suggested, or, what is the same thing, if any excluded object can be pointed out, there will be at least ground for argument as to the special character of this law. If, on the contrary, this act is special only in the sense that its object is single, the question of its special character in a legal sense does not arise.

The case turns, therefore, upon the classifiability, for purposes of legislation, of the object of the present law. This is a question of fact. The law is entirely clear that if an object be susceptible of classification it cannot be legislated for separately. Correlatively, it is equally clear that an object that is not susceptible of classification is not, on that account, placed beyond the pale of legislative control.

The decisive question, therefore, is whether the object of the present law is susceptible of association with other objects for the purpose of legislative classification. This implies the possession by one or more other objects of characteristics so like those of the object contained in this law that the provisions that are appropriate to the one are, for the same reason, appropriate to the others. The application of this rule calls for the discovery in some other public office in this state of characteristics so similar to those possessed by the state commissioner of public roads that the present law

is equally appropriate to such other office or offices. The office of state commissioner of public roads was created by the act of May 17th, 1894. *Pamph. L., p.* 409; *Gen. Stat., p.* 2902. The duties of this officer are prescribed in "An act to provide for the permanent improvement of public roads in this state," approved March 22d, 1895. *Pamph. L., p.* 424; *Gen. Stat., p.* 2902. An examination of this comprehensive statute must satisfy anyone of the entire correctness of the statement made in the brief of the attorney-general, that "there is no other office of like character in the state." A further examination of various public statutes shows that the duties and expenses of this office have been greatly increased during the term of the present incumbent, so that the increased allowance provided by the present law was, in the absence of any constitutional prohibition, an ordinary exercise of legislative discretion. Unaided by any suggestions to that end, I have been totally unable to discover any other public officer with whom this state official could possibly be classified for this legislative object, or even to conceive of any such classification that would not involve absurd results. The case must, therefore, be decided upon the assumption that this office is not susceptible of further classification as regards the subject legislated upon. The application to this state of fact of the established law upon this subject, as outlined above, leads to the conclusion that the present act was a constitutional exercise of legislative power.

The technical propriety of this conclusion, rather than its soundness, is challenged by the attorney-general, upon the authority of *State* v. *Kelsey,* 15 *Vroom* 1, which it is claimed is a judicial precedent upon the precise point. That case decided that the allowance to the secretary of state could not be decreased by the legislature during the term of its incumbent by a law affecting that office alone. *State* v. *Kelsey, supra.*

Without questioning the doctrine that a judicial precedent has, upon a point of law decided by the court, a force that is authoritative and not merely persuasive, it is also recog-

nized that determinations of matters of fact in the course of judicial decisions have no such effect unless under circumstances that are substantially identical. *Lehigh Zinc Co. v. New Jersey Zinc Co., 26 Vroom* 350.

Upon analysis the case of State *v.* Kelsey, upon the point for which it is now cited, will be found to rest upon a decision by the court of a matter of fact that was necessarily limited to the case before it, viz., that the office of secretary of state was at that time capable of classification with other state offices for the legislative purposes imposed by the act then before the court. The reasoning of the opinion is this: The legislature is forbidden to pass special laws increasing or decreasing the allowance of public officers during their terms of office; the object of forbidding the passage of special laws for this purpose was to protect officers and legislators from each other; this object fails of realization if the secretary of state and other state officers may be legislated for separately upon the ground that they are incapable of classification for legislative purposes.

"It seems to me," said the learned Chief Justice who delivered the opinion, "that there is no insuperable objection in the way of classifying these several officers for every legitimate legislative purpose."

In this opinion Mr. Justice Scudder concurred, making it thereby the decision of the court upon this point. Mr. Justice Magie, who dissented from this decision, evidently did so because he had come to the opposite conclusion with respect to the classifiability of the public offices under consideration, for he speaks of them as "public officers who are, in respect to their official characteristics, so distinct as reasonably to form (as regards the subject legislated for) a class by themselves."

The foundation of the decision pronounced in State *v.* Kelsey was, therefore, the proposition of fact that the office of secretary of state was capable of classification for the legislative object in question.

If, by reason of certain expressions contained in the opinion in the case above cited, but not conducive to its decision, the

case be cited as authority for the legal proposition that, where a special law is forbidden, no efficient law can be passed, the doctrine so announced would not only run counter to every other decision upon the subject in the Court of Errors, as well as in the Supreme Court, but would also fail to give any force whatsoever to the word "special" in the amendment of 1874; for, under such judicial interpretation, the framers of the amendments in question, with respect to a large number of important objects, would have declared that when the instrument they were framing forbade the passage of a special law it, in effect, forbade the passage of any law. This construction does violence to fundamental principles of exposition, and is contrary to the express declaration of the instrument itself. Moreover, as pointed out in the admirable brief of the relator, the framers of the constitution, when they desired to interdict the passage of any law increasing or decreasing the allowance of a public officer, did so in direct terms. Thus article V., paragraph 5, is as follows:

"The governor shall, at stated times, receive for his services compensation which shall be neither increased or diminished during the period for which he shall have been elected;" and in article VII., section 11, placitum 1, "The justices of the Supreme Court and Chancellor shall, * * * at stated times, receive for their services a compensation which shall not be diminished during the term of their appointments."

The conclusion I have reached is that the case of State *v.* Kelsey does not stand in the way of the decision of the present case, upon its own facts, in accordance with the accepted legal rules applicable thereto.

The rule to show cause is made absolute, and a peremptory *mandamus* directed to issue pursuant to its terms.