# Richmond.

## WILLIAM A. FARMER AND V. O. SMITH v. F. P. CHRISTIAN, JUDGE, ETC.

March 13, 1930.

The opinion states the case.

*B. B. Campbell, Edward Meeks* and *A. D. Barksdale,* for the petitioners.

*Paul H. Coleman* and *E. P. Buford,* for the respondent.

PRENTIS, C. J., delivered the opinion of the court.

William A. Farmer and V. O. Smith, prohibition inspectors for the State of Virginia, charged with the duty of enforcing the prohibition laws, have been indicted in the Corporation Court of the city of Lynchburg, Virginia, for the murder of Joseph A. Cox. They aver that the charge against them arose out of their attempt to arrest Cox upon a charge of violating the prohibition law. They have filed their original petition in this court, together with certified copies of the affidavits required by Acts 1924, chapter 407, section 55, page 612 (section 4675, subsection 56, Michie's Code of Virginia, 1924), against Hon. F. P. Christian, judge of that court (who had overruled petitioners' motion for change of venue), praying that a mandamus be issued compelling him to grant a change of venue from that court to the court of some other county or city, as provided by that statute.

The defendant judge filed his demurrer to the petition, in which petitioners joined, and for his grounds of demurrer says:

"I. That said provision of the Code (section 4675, subsection 56 of the Code of Virginia, 1919, as amended), relied on by the petitioners for a change of venue, is unconstitutional, for the following reasons, to-wit:

"A. The said provision is directly in conflict with section 63 of the Constitution of Virginia, which provides in part as follows:

" 'The General Assembly shall not enact any local, special or private law in the following cases: * * * 2. Providing for a change of venue in civil or criminal cases.'

"B. The said provision relied on by petitioners is an unwarranted encroachment by the legislative department on the judicial department, forbidden by section 5 of the Constitution of Virginia, in that it seeks to make parties purported to be covered by the same, the judge in their own cases on what shall be evidence of their inability to obtain a fair trial, thereby prohibiting the judge in each instance from exercising a matter of pure judicial discretion.

"C. The said provision of the Code relied on by petitioners is unconstitutional for the further reason that it allows a change of venue without good cause, which is in conflict with section 8 of the Constitution of Virginia, declaring that an accused shall have an impartial trial by a jury of his vicinage.

"II. The said provision relied on by petitioners, should the same be held to be constitutional, has no application to the case at bar.

"III. That, in the event the provision in question should be held to be constitutional, the same has not

been properly invoked in that it should have been preceded by an application on the part of the petitioners for a change of venire.

"IV. That the petitioners have a plain and adequate remedy if the action of this defendant constituted error, namely, by petition to the court for a writ of error after final judgment."

Section 55 of chapter 407, Acts 1924, page 612, (Michie's Code, 1924, section 4675, subsection 56), reads as follows: "Upon the trial of any officer charged with the enforcement of the prohibition laws of the State, for an offense against the person or property of any one committed in the performance of his duties in the enforcement of such laws, on the affidavit of such officer, or his attorney, that such officer cannot obtain a fair trial in the county or city wherein such offense was alleged to have been committed, the court shall change the venue for the trial of such officer to some other county or city wherein a fair trial of the alleged offense may be had. And in case of such change of venue the witnesses of the defendant shall be paid as if they were summoned for the Commonwealth."

The first ground of demurrer is that section 4675, subsection 56, of the Virginia Code, 1924, is in direct conflict with section 63, clause 2, of the Constitution of Virginia, which reads, in part, as follows: "The General Assembly shall not enact any local, special or private law in the following cases: * * * (2) providing for a change of venue in civil or criminal cases."

The initial question clearly presented, then, is whether or not Code, section 4675, subsection 56, which we have just quoted, is a general law, or is a local, special or private law, and hence within the inhibition of Constitution, section 63, clause 2. That

the act does provide for a change of venue in criminal cases is of course manifest, and therefore, if it is a special law, it is invalid.

This court has often undertaken to define the difference between a special and a general law.

For example, in *Ex parte Settle*, 114 Va. 715, 77 S. E. 496, 497, the constitutionality of an act which provided for the appointment of a trial justice in counties having a population of over 300 to the square mile, the real purpose of which was to permit the county of Alexandria to appoint such a justice, was questioned, and this is said: "Laws may be made to apply to a class only, and that class may be in point of fact a small one, provided the classification itself be a reasonable and not an arbitrary one, and the law be made to apply to all of the persons belonging to the class without distinction." The statute was upheld.

In *Strawberry Hill Land Corp.* v. *Starbuck*, 124 Va. 71, 97 S. E. 362, 365, the act providing for drainage districts, which was challenged as unconstitutional, was sustained, and among other things this is said: "If the statute applies throughout the State and to all persons and property within the class specified, and the classification is reasonable and not arbitrary, such a statute is not special but general."

In *Martin's Executors* v. *Commonwealth*, 126 Va. 603, 102 S. E. 77, 79, 724, upholding the constitutionality of the West fee bill, there is an enlightening discussion of the subject in which it is said:

"Perhaps the most satisfactory short definition to be found anywhere is the following, appearing in the collection last cited, taken from *Budd* v. *Hancock*, 66 N. J. Law 133, 48 Atl. 1023, and repeated in *Van Cleve* v. *Passaic Valley Sewerage Commissioners*, 71 N. J. Law 183, 184, 58 Atl. 571, 578: 'A law is "spe-

cial" in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or things from those upon which, but for such separation, it would operate.' This definition undoubtedly strikes at the foundation of the subject, for an arbitrary separation of persons, places or things of the same general class, so that some of them will and others of them will not be affected by the law, is of the essence of special legislation. But what does it take to constitute 'an arbitrary separation'? Manifestly no definition could answer this question, because it must in the nature of things depend upon the purpose and subject of the particular act and the circumstances and conditions surrounding its passage. The courts may look to such circumstances and conditions in passing on the validity of an act. 1 McQuillin on Municipal Corporations, section 202.

\*　\*　\*　\*　\*　\*　\*　\*

"In doubtful cases, a most useful guide in determining whether a statute is general or special within the meaning of constitutional limitations like those involved in this case is to be found in the underlying reasons for such limitations. They are intended, primarily, as a check upon the intentional exercise of legislative power conferring special privileges and immunities, or special restrictions and burdens, upon particular persons or localities to the exclusion of other persons or localities similarly situated. Plain legislative violations, whether expressly intended as such or not, must of course be condemned; but these limitations in the fundamental law had their genesis in a purpose to remedy the mischief of intentionally arbitrary and exclusive legislation. 1 Dill. Mun. Corp., *supra*, section 141. It follows, therefore, that if a law bears on its face no evidence of an exclusive or dis-

criminative purpose, it is *prima facie* valid. As was said in *Budd* v. *Hancock, supra*: 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained, the law is general. Within this distinction between a special and a general law, the question in every case is whether any appropriate subject is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legislative classification of its objects, it is a general law.' "

The subject was again discussed in *Anthony* v. *Commonwealth*, 142 Va. 577, 128 S. E. 633, and it was there contended that the statute which permits testimony showing the bad reputation of the accused as a violator of the prohibition laws violates the Constitution, section 63, clause 3, which forbids the enactment of special or private laws changing the rules of evidence or regulating practice in judicial proceedings. It was held that the classification made by that statute is reasonable and not arbitrary; that it includes all persons throughout the State similarly situated; and that so being general and not special the General Assembly had the power to change the common law rules of evidence in such cases.

Applying the principles enunciated in these cases to this act, we must first consider and determine whether or not the classification is reasonable.

█ The underlying motive for the statute doubtless is that in some localities in this State there may be such a strong prejudice against the enforcement of the prohibition laws, and the local prejudice is so great, that sometimes officials charged with crimes committed while attempting to enforce these laws cannot

have a fair trial therein. We remark in passing that upon every test of the prohibition statute, the local sentiment generally appears to be in favor of its enforcement. Certainly it is true that whenever any one is charged with the commission of a crime of magnitude, and the public knows of no reasonable justification for the offense, the local feeling is frequently much excited thereby. This is fully recognized by the General Assembly and by the courts, and provision has been made either for securing a jury from some other vicinage (change of venire), or transferring the case to some other jurisdiction where there is no such public excitement. Code, section 4914. Local prejudice, in such extreme cases, however, exists generally and is not confined either particularly or exclusively to officials engaged in attempting to enforce the prohibition statute. Such prejudice affects all persons who are charged with heinous crimes. What sound reason, then, can there be for the special distinction expressed by the statute between the relief to be accorded to prohibition officers charged with crime and private citizens or other officials charged with similar crimes? What appealing reason can there be for according the special privilege or immunity of change of venue, as a matter of right, to officers charged with enforcing the prohibition statute, which should not be also accorded to officers charged with the enforcement of all the other criminal statutes?

We confess that we are unable to find any sound reason for this discrimination. The only apparent purpose is by legislative fiat to segregate these persons, whenever they may be charged with crimes, for a special immunity, and to accord to them a peculiar privilege which is denied to all other persons in the State who are similarly situated.

■ The privilege itself is quite unusual. The statute, by its terms, attempts to divest the trial court of the power to decide whether or not the accused is within the privileged class which the statute essays to create, but by its terms all that is required is that the accused person shall make an affidavit that he is a prohibition officer, and that the alleged crime was committed by him in the performance of his duty. He is thus made a judge in his own case. By the express terms of the statute, he may by his own affidavit transfer himself to the privileged class when, if there were an investigation, it might be found that he was not in fact within that preferred class. That this is special class legislation, unreasonable in fact and most objectionable in character, seems to us to be quite apparent. It discriminates against all other officials who are equally charged with making arrests for alleged violations of all other criminal laws, and against all other persons who are not officials who may be charged with crime—that is, against all others who are so unfortunate as to be similarly situated. The classification is illogical, unreasonable, and plainly violates Constitution, section 63, clause 2, because it is a special act providing for a change of venue for a limited class of persons when they happen to be charged with crime.

There is another feature of the case which should be noticed. There is nothing more obnoxious to lovers of justice than that any man should be a judge in his own case. This statute conflicts with that principle. Who should be empowered to say that the local prejudice against any prohibition officer charged with crime is so great that he cannot obtain a fair trial before a jury of the vicinage? Can there be any fair qualification of the assertion that certainly the person so charged should not be permitted to determine this important question,

and so thereby to impede and delay the administration of the criminal law and add to the criminal expenses of the Commonwealth? Every other person charged with a crime who believes that his rights are jeopardized, because of local prejudice against him, must submit such a question to the trial judge. Other accused persons must establish the fact of local prejudice by witnesses, and are only entitled to a change of venire, or to a change of venue after showing that such local prejudice against them in fact exists. Not so as to prohibition officers, if this statute be valid, because the person charged with the crime himself determines the judicial question as to whether or not the local prejudice exists. He is only required to make an affidavit, and the statute undertakes imperatively to require the trial judge to change the venue.

■ ■ Courts have been reluctant, perhaps too timid, in enforcing the Bill of Rights, section 5, requiring that the legislative, executive and judicial department of the State shall be separate and distinct. The question in any particular case as to whether there is (a) local prejudice which will prevent a fair trial, as well as (b) the question whether or not the alleged crime was committed by an officer charged with the enforcement of the prohibition laws of the State, are both judicial questions. Because they are judicial, as distinguished from legislative, questions they cannot be decided by the General Assembly, but must be decided by a court. They are not within the legislative power because they depend upon the determination of the facts from the evidence in each case. As the courts must obey the statutes (within the legislative power) which define their jurisdiction, and the general laws which establish and regulate the rights of litigants, so the General Assembly must, under the Bill

of Rights, respect the judicial power and not seek to enter the court room, either to decide particular issues or to permit persons accused of crime to decide strictly judicial questions.

It seems then manifest that this act also violates the Bill of Rights with reference to the separation of the legislative and judicial power.

A single illustration demonstrates the soundness of the views which we have expressed. Two men may be indicted as principals for the commission of the same crime. Upon their arraignment, standing side by side, one acting as judge in his own case may determine (a) that he as a prohibition officer committed the offense charged in the performance of his duties, and (b) that the local prejudice against him is so great that he cannot obtain a fair trial in the court having territorial jurisdiction of the case, and may thus require the judge to change the venue; while the other, not a prohibition officer, but similarly situated as an alleged criminal, if he also desires to have a change of venue, must submit the same question to the trial court for decision. The fundamental essential of a general law is that it applies equally to all similarly situated while the distinguishing mark of a special law is that it does not so apply.

It is doubtless unnecessary, but we reiterate the constitutional objections to this statute. It is class legislation which attempts to invest a certain class of persons who may happen to be charged with the violation of any of the criminal laws with a privilege accorded to no other official and to no other citizen. It is a special act, providing for a change of venue, and violates the Constitution (section 63, clause 2), because there is no sufficient reason for such a classification. It violates the Virginia Bill of Rights, clause 5, provid-

ing for a separation of the legislative from the judicial power. Its purpose is the taking from the courts the decision of strictly judicial questions, and the vesting of that judicial power in the very person who in the particular case is charged with the specific crime. It seeks to enter the court room and exercise the judicial power, and this exceeds the legislative power.

For these reasons, the prayer for the mandamus is denied.

*Denied.*