# 𝕾taunton

ISAAC QUESINBERRY V. A. J. HULL.

September 22, 1932.

Present, All the Justices.

The opinion states the case.

*L. E. Lindsay,* for the plaintiff in error.

No appearance for the defendant in error.

HOLT, J., delivered the opinion of the court.

On September 10, 1930, William Kent Howlett, trial justice of Carroll county, at the instance of A. J. Hull, issued a civil warrant against the petitioner, Isaac Quesinberry. On that warrant the justice gave judgment against Quesinberry in the sum of $4.00. After a controversy, not relative to the issue here, it was on appeal heard by the Circuit Court of Carroll county, without the intervention of a jury. That court was of opinion that the justice was a duly elected officer under a valid constitutional provision, and confirmed his judgment.

This act of the General Assembly was approved March 21, 1928, Acts 1928, chapter 311, page 849:

"Be it enacted by the General Assembly of Virginia, That paragraph one of section forty-nine hundred and eighty-eight of the Code of Virginia, as amended, be amended and re-enacted so as to read as follows:

"Section 4988. (1) In counties having a population of six thousand inhabitants or more, as shown by the last

preceding United States census, there may, in his discretion, be appointed by the judge of the circuit court for such county, for a period of four years, and every four years thereafter, a trial justice for such county, who shall be a resident of said county, or any town or city within the geographical limits of said county; provided, that in the county of Carroll, at the general election in November, nineteen hundred and twenty-eight, and every four years thereafter, there shall be elected by the duly qualified voters of the county, a trial justice whose term of office shall be four years beginning the first day of January next following his election. Any vacancy occuring in the office of trial justices shall be filled by the judge of the circuit court of said county."

It amends an act approved March 25, 1926, Acts 1926, page 862, chapter 511, Code, section 4988. That act is a general act dealing with the appointment of trial justices, and defines their powers and duties. Its first section reads as follows:

"Trial justices in counties having a population greater than six thousand inhabitants as shown by the last preceding United States census.—(1) In counties having a population of six thousand inhabitants or more, as shown by the last preceding United States census, there may in his discretion be appointed by the judge of the circuit court for such county, for a period of four years, and every four years thereafter, a trial justice for such county, who shall be a resident of said county, or any town or city within the geographical limits of said county. Any vacancy occurring in the office of trial justices shall be filled by the judge of the circuit court of said county."

From this it appears that the general act of 1926 was amended so as to provide for a trial justice of Carroll county who was to be elected by the people and not appointed by the judge. In all other respects the act of 1926 stood unchanged.

Section 64 of our Constitution provides in part as follows: "In all cases enumerated in the last section, and in every other case which, in its judgment, may be provided for by general laws, the General Assembly shall enact general laws. Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or indirectly to enact, and shall not have the effect of the enactment of, a special, private, or local law."

Section 63 of the Constitution provides that the General Assembly shall not enact local or special laws for conducting elections. It is contended that the act in judgment violates these constitutional provisions.

■■ That we are to uphold the constitutionality of statutes whenever possible is horn-book law, not questioned at this late date. The legislature functions under no grant of power. It can do those things which are not forbidden by the State or Federal Constitutions, or which are not repugnant to those elementary social rights upon which society, as we know it, rests. *Farmville* v. *Walker,* 101 Va. 323, 330, 43 S. E. 558, 561, 61 L. R. A. 125, 99 Am. St. Rep. 870. All laws are presumed to be constitutional and must, wherever there is doubt, be sustained, but there must be some room for honest doubt, arising out of the law itself as written. There must be some substance in the doubt; a shadow is not enough.

■ Constitutions are not esoteric documents and recondite learning ought to be unnecessary when we come to interpret provisions apparently plain. They speak for the people in convention assembled, and must be obeyed.

■ "It is a general rule that the words of a Constitution are to be understood in the sense in which they are popularly employed, unless the context or the very nature of the subject indicates otherwise." Black on Interpretation of Laws, page 25.

"In the first place, then, every word employed in the Constitution is to be expounded in its plain, obvious, and com-

mon sense, unless the context furnishes some ground to control, qualify, or enlarge it. Constitutions are not designed for metaphysical or logical subtleties, for niceties of expression, for critical propriety, for elaborate shades of meaning, or for the exercise of philosophical acuteness or judicial research. They are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings. The people make them, the people adopt them, the people must be supposed to read them, with the help of common-sense, and cannot be presumed to admit in them any recondite meaning or any extraordinary gloss." 1 Story Const., section 451.

It is in attempts to harmonize these principles and in efforts to sustain statutes whose constitutionality is more than doubtful that courts wander in that judicial labyrinth deplored by Judge Dillon.

■ Before a law which puts Carroll county in a class by itself can be sustained, some sort of reason for that classification must appear. There is no basis for it in the record and we know of nothing out of the record which can sustain it. Nowhere and from no direction is there light. It is earmarked neither by statistics nor by location.

In *Martin's Executors* v. *Commonwealth*, 126 Va. 603, 102 S. E. 77, 82, 724, the West fee bill (Acts 1914, c. 352, p. 707) came under review. There general provisions were made for maximum compensation to be paid to certain city officials, payment to be measured by population as shown by the Federal census of 1910. Richmond and Norfolk, being the only cities whose population exceeded 60,000, stood in the first class. No provision was made under which other cities might grow into that class, and for that in major measure the validity of this law was challenged. Kelly, P., said that the legislature had the right to classify cities; that it might do so in a general law, and that it was not invalid merely because the contingencies of future increases or decreases had not been provided for, and cites with approval

this from Judge Dillon (1 Dillon's Munic. Corp. [5th ed.] section 152, page 285) :

"The proposition * * * that a law otherwise constitutional is invalid simply because it does not provide for a future contingency which may never occur, does not seem to the author to be well considered or sound. See Mr. Hubbard's article in Harvard Law Rev., Vol. XVIII, pp. 592-594, June, 1905."

The opinion further said: "Constitutional prohibitions against special legislation do not prohibit classification. A general law in its simplest form embraces all persons and places within the State, but varying circumstances often render it impossible to apply the same rule everywhere and to everybody. But the classification must not be purely arbitrary. It must be natural and reasonable, and appropriate to the occasion. There must be some such difference in the situation of the subjects of the different classes as to reasonably justify some variety of rule in respect thereto. Though an act be general in form, if it be special in purpose and effect, it violates the spirit of the constitutional prohibition. * * * If any state of facts can be reasonably conceived that would sustain it, that state of facts at the time the law was enacted must be assumed. 1 Dill. Mun. Corp. (5th ed.) section 146; *Polglaise* v. *Commonwealth,* 114 Va. 850, 865, 76 S. E. 897."

The act was sustained because the court was of opinion that it was general in its purpose and that its classifications were not only not arbitrary but entirely reasonable. That the sergeants of Richmond and Radford should not receive the same pay anyone would concede. Classifications which are reasonable are always constitutional, and are not invalidated merely because there is failure to provide for possible future contingencies.

In *Ex Parte Settle,* 114 Va. 715, 77 S. E. 496, 497, Keith, P., said: "Laws may be made to apply to a class only, and that class may be in point of fact a small one, pro-

vided the classification itself be a reasonable and not an arbitrary one, and the law be made to apply to all of the persons belonging to the class without distinction."

A classification must have some reasonable basis. *Polglaise's Case,* 114 Va. 850, 76 S. E. 897; *Reaves Warehouse* v. *Commonwealth,* 141 Va. 194; 126 S. E. 87; *Anthony* v. *Commonwealth,* 142 Va. 577, 128 S. E. 633; *Farmer* v. *Christian,* 154 Va. 48, 152 S. E. 382, 383.

In the last-named case this definition of special acts, taken from *Budd* v. *Hancock,* 66 N. J. Law 133, 48 Atl. 1023, received qualified approval: "A law is 'special' in a constitutional sense when by force of an inherent limitation it arbitrarily separates some persons, places or things from those upon which, but for such separation, it would operate."

Prentis, C. J., in discussing it said:. "This definition undoubtedly strikes at the foundation of the subject, for an arbitrary separation of persons, places or things of the same general class, so that some of them will and others of them will not be affected by the law, is of the essence of special legislation. But what does it take to constitute 'an arbitrary separation?' "

It is not necessary for us to undertake to formulate an inclusive definition of "arbitrary separation." For the purposes of this case it is enough for us to know that the manner of selection of a trial justice in Carroll county differs from that provided in every county in the State wherein such an official may be named. If this is not special legislation then these constitutional safeguards might as well be wiped away as meaningless.

The statute in judgment, to be sustained, must have back of its classification some reason. For all that we know or that has been suggested, it is utterly arbitrary. Carroll and Grayson, for example, stand upon a common footing. It is unconstitutional and void. Mr. Howlett holds no office under it, and can impose no fine.

The objectionable provision was written into an

amendment of a general law and may be deleted without in any wise affecting the statute as it stood before it was amended.

The judgment appealed from must be reversed, and it is so ordered.

*Reversed.*