# Staunton

## CITY OF NEWPORT NEWS, A MUNICIPAL CORPORATION v. ELIZABETH CITY COUNTY.

September 7, 1949.

Record No. 3549.

Present, All the Justices.

The opinion states the case.

*Harry L. Nachman* and *Charles E. Ford*, for the appellant.

*James G. Martin & Sons* and *J. Wilton Hope, Jr.*, for the appellee.

*Conway H. Sheild, Jr., Thomas B. Gay* and *H. Merrill Pasco*, amici curiae.

SPRATLEY, J., delivered the opinion of the court.

This proceeding was instituted by the city of Newport News, Virginia, under the Virginia Declaratory Judgment Act, Acts 1922, page 902, Virginia Code, 1942 (Michie), sections 6140a-6140h, inclusive, to determine the constitutionality of an Act of the General Assembly of Virginia, which prohibits a city from annexing an area or portion of any county "unless, after the annexation of said area, there will remain in said county at least as much as 60 square miles of unannexed territory," Acts 1938, page 25, Virginia Code, 1942 (Michie), section 2968.

The petition of the city alleged that it was bounded on the north by Warwick county; on the east by Elizabeth City county; on the west by James River; and on the south by the waters of Hampton Roads; that Elizabeth City county contained approximately 53 square miles of area; that because of necessity and expediency the city intended to bring annexation proceedings to acquire certain areas in Elizabeth City county adjoining the city; that by virtue of the Act of 1938, which the county relied on as a complete defense to any annexation proceedings, the city was prohibited from acquiring any territory in that county; and that an actual controversy existed between the city and Elizabeth City county.

The petition further sets out that Warwick county claimed "approximately 63 square miles in area," and consequently the Act prohibited the city from expanding to the north except for a few square miles; that the city of Hampton, wholly confined within Elizabeth City county, was, because of said Act barred from extending its territorial limits in any direction except to take in some land in the county upon which its high school building had been erected; that the only other county in Virginia having less than 60 square miles is Arlington county and the only other city similarly situated which is affected by the Act is the city of Alexandria, which while prevented from expanding its

limits into Arlington county has the right to annex territory in Fairfax county, a larger county.

The petition alleged that the Act was conceived, introduced, and enacted through the influence of the Honorable G. A. Massenburg, Delegate from Elizabeth City county in the General Assembly, for the sole purpose of preventing Newport News from expanding its territorial limits into Elizabeth City county, or into Warwick county except for a few square miles; that the Act in its nature, design, purpose and effect is discriminatory and special legislation, and in conflict with the Constitution of Virginia and the general annexation laws of the State; and is so unreasonable, arbitrary and unjustifiable in effect as to prevent the expansion of the city of Newport News in an easterly direction regardless of its growth and needs.

The bill prayed for a declaratory judgment, declaring the Act unconstitutional on the grounds that it is in conflict with the Constitution of Virginia and contravenes chapter 120 of the Code of Virginia, 1942 (Michie), as amended, providing for the extension of the corporate limits of cities, based upon the necessity and expediency for annexation of additional territory.

A demurrer was filed on behalf of the county on the grounds: (1) That it was not suable on the case alleged; (2) that the petition was premature in that it failed to show any actual controversy between the parties, because no ordinance for annexation had been adopted by the council of the city; (3) that the plaintiff had a plain remedy at law by which to test the Act by annexation proceedings; and (4) that the petition showed that the Act was constitutional and valid.

The case was heard on the petition and demurrer. In addition to the facts admitted by the pleadings, the court took judicial cognizance of certain other facts mostly geographical and territorial, which are set out in the written opinion of the trial judge. After due consideration, the trial court overruled the demurrer as to the first three

grounds but sustained the fourth ground and held the Act was constitutional.

The city applied for and obtained this writ of error.

The county of Elizabeth City filed no cross-appeal. In its brief and argument no mention is made of the first and third grounds of demurrer.* In this court, however, it relies upon the second ground—that the petition was premature because it did not show the existence of an actual controversy between the parties.

We do not deem it proper or necessary to consider this contention here further than to say that the record and the briefs disclose an actual controversy between the parties, a controversy which lacked only the preliminary steps in the prosecution of a suit to bring the annexation issue into court.

The sole issue for our determination is the constitutionality of the Act of 1938.

At the outset of this consideration it must be remembered that every presumption is made in favor of the constitutionality of an act of the legislature. A reasonable doubt as to the constitutionality of a law must be resolved in favor of its validity. The Constitution is not a grant of power, but only the restriction of powers otherwise practically unlimited and except so far as restrained by the Constitution of this State and the Constitution of the United States, the legislature has plenary power. It is only in a case where a statute is plainly repugnant to some provision of the Constitution that the courts can declare it null and void. The wisdom and propriety of the statute come within the province of the legislature. *Almond* v. *Gilmer*, 188 Va. 822, 834, 51 S. E. (2d) 272, and cases cited.

By section 61 of the Constitution of Virginia it is provided:

"No new counties shall be formed with an area of less than six hundred square miles; nor shall the county or

---

*The county of Warwick, by its counsel, *amici curiae*, has been permitted to file its brief in this case. On August 13, 1949, subsequent to the institution of these proceedings, the city of Newport News instituted a suit seeking to annex approximately 11¼ square miles of Warwick county.

counties from which it is formed be reduced below that area; nor shall any county be reduced in population below eight thousand. But any county, the length of which is three times its mean breadth, or which exceeds fifty miles in length, may be divided at the discretion of the General Assembly."

Section 126 of the Constitution is as follows:

"The General Assembly shall provide by general laws for the extension and contraction, from time to time, of the corporate limits of cities and towns; and no special act for such purpose shall be valid."

The Constitution itself in section 61 fixes a limitation both upon the area and population below which a county may not be reduced, under circumstances mentioned, regardless of the needs or necessity of any city, town or other county.

Section 126, in broad and general terms, empowers the General Assembly to provide by general laws for the extension and contraction of the corporate limits of cities and towns. This is not a self-operating section. The mode of the proceedings, the agency therefor, the conditions and the limitations thereon, are required to be provided by legislative action within constitutional limits. Accordingly, the legislature has proceeded to provide such requirements under the provisions found in chapter 120 of the Code of Virginia, 1942 (Michie), sections 2956 to 2971 (1), in which section 2968, the Act of 1938, is included. The nature and extent of the proceedings authorized are dependent upon legislative action, within constitutional limitations, and, therefore, the courts have power only to determine whether the legislation is in conflict with constitutional provisions and not whether it is wise or proper.

In view of the city's contention that the procedure and manner of enactment of the Act shows that it is special legislation rather than general, singling out Newport News as its victim, we will first consider the legislative history of the Act.

The Act of 1938, page 25, in its entirety, reads as follows:

"In no annexation proceedings instituted by any city or town under the provisions of this chapter or the provisions of any other statute, shall an area or portion of any county be annexed to any city unless, after the annexation of said area, there will remain in said county at least as much as sixty square miles of unannexed territory; provided, however, that if prior to the passage of this act any city has become and is now the owner of a public building or buildings situated on territory or land immediately contiguous to said city, then said city shall be permitted to institute and conduct, in accordance with the provisions of the statutes applicable, proceedings for the annexation of the land on which said building or buildings are situated, and a sufficient area surrounding same to permit of the reasonable use of said building or buildings for the purpose for which same are customarily used, even though after such annexation the unannexed area remaining in the county be less than sixty square miles. No city or town in extending its corporate limits under the provisions of this chapter, shall include the territory of any national soldiers' home for disabled volunteer soldiers, the inmates of which, by reason of their residence in such home do not acquire the rights of citizenship, and the property of which institution is not taxable for state or municipal purposes, nor shall such city or town enumerate in its census the inmates of such homes as a part of its population. If any city or town, when extending its corporate limits under the provisions of this chapter, shall include in such new corporate limits the grounds of any normal or agricultural institute of this State, the property of which is not taxable for State or municipal purposes, then only such persons as have acquired a permanent right in such institution shall be included in the enumeration of population or census of such city or town."

In obedience to the Constitution of 1902, the General Assembly, by an Act approved March 10, 1904, made provision for the expansion and contraction of the corporate limits of cities and towns. Acts 1904, page 144. Included in the provisions of this Act was section 12, (Virginia Code,

1904, (Pollard), section 1014a (12)), which by subsequent amendments became Virginia Code, 1942, (Michie), section 2968.

Section 12, in its original form, read as follows:

"Provided that no city or town in extending its corporate limits under the provisions of this act shall include the territory of any national soldiers' home for disabled volunteer soldiers whose inmates, by reason of their residence in such home, do not acquire the rights of citizenship, and the property of which institution is not taxable for State or municipal purposes, nor shall such city or town enumerate in its census the inmates of such homes as a part of its population. Provided, further, that if any city or town, when extending its corporate limits under the provisions of this act, shall include in such new corporate limits the grounds of any normal and agricultural institute of this State, the property of which is not taxable for State or municipal purposes, then only such persons as have acquired a permanent right in such institution shall be included in the enumeration of population or census of such city or town."

The Act of 1904 was amended in 1930 by adding the following provision as its first sentence: "In any county having an area of less than thirty square miles no portion thereof shall be annexed to any city or town unless the county be annexed as a whole." Acts 1930, page 561, Code of Virginia, 1930, (Michie), section 2968.

At the date of the amendment, the territorial limitation affected Arlington county, the smallest county in the State, and the city of Alexandria only.

In 1936, the General Assembly refused to amend Code, section 2968. A bill for that purpose was referred to the committee on counties, cities and towns; but was never reported out of the committee. (H. J. page 354).

On the first day of the 1938 session of the General Assembly of Virginia, the Delegate from Elizabeth City county introduced a bill to amend and reenact Code, section 2968, as theretofore amended by striking out the sentence added by the 1930 amendment and substituting in its place the first

sentence now in the statute, which increased the territorial limits to which a county might be reduced to 60 square miles and added a savings provision for cities owning public buildings located in a county prior to the passage of the Act.

The bill was referred to the joint committee of the General Assembly on special, private and local legislation. After a favorable report of that committee, it was referred to the committee on counties, cities and towns. It was duly approved by the latter committee. On its second reading, a motion by the Delegate from the city of Newport News to amend by striking out 60 square miles and substituting 260 square miles was rejected. (H. J. p. 130). On the 31st day of January, 1938, the bill was passed by the House of Delegates by vote of 51 yeas to 38 nays. (H. J. p. 141); on February 10, 1938, passed by the Senate, 33 yeas to 0 nays, (S. J. p. 215); and on February 26, 1938, signed by the Governor.[1]

The Act of 1938 has since been appropriately carried in Code of Virginia, 1942, (Michie), as section 2968, in chapter 120, under the chapter title, "Extension or Contraction of Corporate Limits of Cities and Towns."

The joint committee of the Virginia General Assembly on special, private and local legislation was by Virginia Constitution, section 51, composed of seven members from the House of Delegates and five members from the Senate.[2] The nature of the bill indicates that it was properly referred to the legislative committee on counties, cities and towns. The fact that it was referred to this committee was in no wise indicative that it was special rather than general legislation. House and Senate Journals do not show that any constitutional requirement was disregarded in its enactment into law.

[1] Since 1938 there have been futile efforts made at subsequent sessions of the legislature to amend the Act. (H. J. 1940, p. 921); (S. J., 1940, p. 685); (H. J. 1948, pages 438-9).

[2] In November, 1948, by constitutional amendment, section 51 was abolished on the grounds that it served no useful purpose and merely delayed legislation.

In *Gandy* v. *Elizabeth City County*, 179 Va. 340, 344, 19 S. E. (2d) 97, we held that an act was general even though the legislative committee to which it was referred thought that the purpose to be accomplished could not be effected by a general law, and that a special act was necessary.

The 1938 Act is general in form. The burden is upon him who attacks it to show that in purpose and effect it is special legislation. If it meets every test of a general law, its legislative history cannot transform it into special legislation.

On its face, the Act is applicable to all cities, towns and counties of the Commonwealth, which now or may hereafter come within its qualifications. The determination by the General Assembly of the minimum size of counties in Virginia was in exercise of legislative discretion, and was of the same pattern as section 61 of the Constitution prescribing, under certain circumstances, a minimum in the population or the area of a county.

It is the conceded duty of the General Assembly in making provision for the extension and contraction of cities and towns to have regard for the rights and interests of the counties, cities and towns alike. The legislature has full power to determine, within reasonable limits, what public convenience and public welfare require, and to effect that end it has full power to enact legislation, except so far as restrained by the Constitutions of this State and of the United States.

Undoubtedly, there are two sides to the question as to the wisdom or expediency of the legislative Act. It is understandable why the needs of a city may justify its expansion. It is also understandable why a county may be opposed to the loss of its territory. It is a matter of common knowledge that the territory sought to be annexed by a city often contains the most valuable property located in the county. The impact of loss of territory and population upon the financial and governmental organization of a county may present serious questions. All of this the legislature had the right to consider in determining whether a county should be rendered impotent to function as such. In view of the

procedure in the enactment of the statute in question, it is fair to presume that the legislature had before it the facts and the claims which related to the rights and interests of cities and towns. It was acquainted with the geographical and territorial situation of the counties and cities in Virginia. The amendment of 1938 increased the territorial limitation of the former Act from 30 to 60 square miles in favor of counties. The history of the statute shows that it was not hastily enacted; but that it was subject to deliberate consideration at every stage. Every subsequent effort to amend it has been fruitless.

The city contends that even if the Act be construed as a general law, it is, nevertheless, violative of the Constitution and general laws of the State. This brings us to the real question: Did the legislature have the power to say by general law that no county should be reduced below 60 square miles in area in annexation proceedings instituted by any city or town?

Section 5 of the Constitution declares: "That the legislative, executive and judicial departments of the State should be separate and distinct."

Article 3 of the Constitution provides that: "Except as hereinafter provided, the legislative, executive and judicial departments shall be separate and distinct, so that neither exercises the powers properly belonging to either of the others, nor any person exercise the power of more than one of them at the same time."

■ The conditions under which cities may annex territory of the counties and the procedure therefor are left entirely to the discretion of the legislature. The Constitution contains no provision which confers upon the judicial department the power or function of ascertaining or determining the necessity for or the expediency of extending the corporate limits of cities, towns or counties. The only power of the courts to allow the expansion or contraction of cities is conferred by legislative action.

In 1940, Newport News had an area of 3.07 square miles,

the county of Warwick an estimated 71.30 square miles,* and the county of Elizabeth City 55.40 square miles. At the time the Act of 1938 was passed, Elizabeth City county and Arlington county each had less than 60 square miles; Mathews county had 87 square miles; the county of York 123 square miles; and the county of James City approximately 150 square miles. The Act of 1938 affected the cities of Alexandria and Hampton, as well as the city of Newport News and the town of Phoebus. It affected the counties of Elizabeth City and Arlington, and Warwick escaped inclusion only by having, perhaps, a few square miles over 60.

The area or portion of Warwick county sought to be annexed in the proceedings already instituted by Newport News is greater than is the excess of the entire area of the county beyond sixty square miles. Recent annexation cases heard in this court have resulted in the annexation of many square miles of county territory by adjoining cities. We are unable to foretell what the future will bring.

The city argues that, under the circumstances surrounding the introduction and passage of the Act, and under the peculiar conditions therein set out, the sole purpose of its enactment was to arbitrarily prohibit Newport News from expanding into Elizabeth City county.

It is pointed out that Elizabeth City county is the only county in the State in which there is located a national soldiers' home and a normal or agricultural institute, and that the city of Hampton is the owner of a public building situated on land in Elizabeth City county immediately contiguous to the said city; and that these three situations so identified Elizabeth City county that the legislature might as well have said that the city of Newport News shall be forever barred from annexing territory in said county.†

*The actual area of Warwick county is in dispute. A proceeding under Virginia Code, 1942, (Michie), section 2685 has been brought by Warwick to establish the true boundary line between it and the adjoining county of York. The city of Newport News has requested that it be made a party to that proceeding.

†By an Act of the General Assembly, Acts 1948, chapter 354, page 687, *et seq.*, it is provided that, under specified conditions, "any one or more counties having an area of less than seventy-five square miles of high land,

May it not as well be said that the purpose of the Act was to protect Elizabeth City county and the other counties similarly situated from loss of their territory? It is not difficult to conceive of the interest of Elizabeth City county and other counties of the State in its enactment, in view of the support of their legislative representatives. Under our form of government the rights of all parties affected by legislation are entitled to fair consideration.

■ Legislative action is not responsible for the geographical situation of the city of Newport News. In a determination of the constitutional validity of a general statute, political, economic and geographical situations have no place. Such situations bring up questions of public welfare and conveniences which invoke the wisdom and policy of the legislature in their determination, within reasonable limits. We repeat that courts are concerned only as to whether the determination of the legislature has been reached according to, and within, constitutional requirements.

Assuming that the saving provision of the 1938 Act as to land occupied by a public building of a city was included for the sole benefit of the city of Hampton, it can well be applied to any city or town similarly situated. However, the exception is so reasonable as to need no explanation and certainly constitutes no arbitrary classification. The other two provisions of the Act are directed at the annexing city or town, and do not affect its right of annexation, except as to non-taxable land, (a subject usually not deemed desirable for annexation), and as to enumeration of population. These

---

and any city or town, where such county, city or town, as the case may be, either adjoins or is adjacent to any city, having a population in excess of thirty thousand inhabitants, all according to the last preceding United States census, may consolidate with such city having a population in excess of thirty thousand; into a single city; or into a single city and the remaining portions of such counties not so consolidated with such city may be consolidated with each other or with adjoining or adjacent counties into one or more counties; or any such counties and cities may be consolidated into a single county or more than one county; provided, however, that nothing in this act shall be construed to apply to or confer any powers upon any county having a density of population in excess of two thousand per square mile according to such census, or apply to or confer any powers upon any city adjoining any such county."

provisions, however, apply equally to the city of Hampton and the town of Phoebus, as they do to the city of Newport News, and to all municipalities which may seek to annex territory in any county, in which the same situations may now or hereafter exist.

In the absence of arbitrary action plainly discriminatory and repugnant to the Constitution, enactments of the legislature must prevail. What constitutes arbitrary action is difficult to define, because it is dependent upon the purpose and subject of a particular act and the circumstances and conditions surrounding it. It can hardly be said that legislation protecting the integrity of a county is arbitrary because it prevents the city from obtaining an advantage at the expense of the county. A deliberate consideration of the values involved and the interests of the respective parties remove the implication of unfair treatment.

The Act of 1938 is expressed in the broadest possible general language. It involves no classification of the city of Newport News, or of any other city. It expresses the determination of the General Assembly as to what the minimum size of counties in Virginia shall be. The Act is made applicable to all counties and all cities of the Commonwealth, which now or hereafter come within the limitation therein. No specific county is mentioned by name in the statute. No city or town is referred to in the Act by name. The city of Newport News is not alone affected by the Act. The Act applies to several municipalities. It applies not only to Elizabeth City county, but to all other counties which come within its specifications.

A classification in a statute must be natural, reasonable, and appropriate for the occasion. Classification based on population differences are found in the Constitution of Virginia and in many acts of the General Assembly. Cities and towns are classified by population in the Constitution, sections 98 and 116 and in Virginia Code, 1942, (Michie), sections 2881, 2886, 2910. Such classifications have been sustained by this court in a number of cases as justified by the differences in local public services, tax systems, and gov-

ernmental organization. Classifications based on territorial area are justified for the same reason because they reflect the differences in the amount, degree, and character of public service and governmental organization.

The test of reasonableness of classification is said to be whether it embraces all of the classes to which it relates. The basis of the classification involved must have a direct relation to the purpose of the law, and must present a distinction which renders one class, in truth, distinct or different from another class. The validity of a classification of municipal corporations is not to be ascertained merely by the number affected by an act, but whether the act applies to and embraces all municipal corporations which are in or may come into like situations and circumstances. It is not inconceivable that, in the future, the Act may affect other counties.

We need not seek authority outside of the State on the question whether the Act of 1938 is unconstitutional either as a special or general act. That question has been settled and determined in this Commonwealth by a long line of cases.

In *Ex parte Settle*, 114 Va. 715, 718, 77 S. E. 496, we sustained the constitutionality of an act applicable to any county then or thereafter having a population of 300 or more to the square mile. The act applied at the time of its enactment only to the county of Alexandria, now Arlington. In upholding the statute, we there said:

"It is true that the act applies only to the county of Alexandria, that being the only county in the State which has a population of three hundred or more to the square mile. But the fact that a law applies only to certain territorial districts does not render it unconstitutional, provided it applies to all districts and all persons who are similarly situated, and to all parts of the State where like conditions exist. Laws may be made to apply to a class only, and that class may be in point of fact a small one, provided the classification itself be a reasonable and not an arbitrary one,

and the law be made to apply to all of the persons belonging to the class without distinction."

In *Strawberry Hill Land Corp.* v. *Starbuck*, 124 Va. 71, 79, 97 S. E. 362, in upholding the Drainage Act of 1941, we said:

"If the statute applies throughout the State and to all persons and property within the class specified and the classification is reasonable and not arbitrary, such a statute is not special but general."

In *Martin* v. *Commonwealth*, 126 Va. 603, 612, 102 S. E. 77, 724, in sustaining a statute, which based a classification of county and municipal officers with regard to the population of their respective localities, as a general rather than a special law, quoting from *Ex parte Settle, supra,* this appears:

"It follows, therefore, that if a law bears on its face no evidence of an exclusive or discriminative purpose, it is *prima facie* valid. As was said in *Budd* v. *Hancock, supra* [66 N. J. L. 133, 48 A. 1023]: 'The test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes that makes it special, but what it excludes. If nothing be excluded that should be contained, the law is general. Within this distinction between a special and a general law, the question in every case is whether any appropriate subject is excluded to which the law, but for its limitations, would apply. If the only limitation contained in a law is a legislative classification of its objects, it is a general law.' "

In *Reaves Warehouse Corp.* v. *Commonwealth*, 141 Va. 194, 209, 126 S. E. 87, it was said:

"And in the same case this appears: 'Constitutional prohibitions against special legislation do not prohibit classification. A general law in its simplest form embraces all persons and places within the State, but varying circumstances often render it impossible to apply the same rule everywhere and to everybody. But the classification must not be purely arbitrary. It must be natural and reasonable, and appropriate to the occasion.' "

In *Bryce* v. *Gillespie*, 160 Va. 137, 168 S. E. 653, we sustained the constitutionality of an act prohibiting any person not an attorney from representing another's claim in court as not being an unreasonable or arbitrary classification.

In *Town of Falls Church* v. *County Board of Arlington County*, 166 Va. 192, 184 S. E. 459, we sustained the constitutionality of a general act which permitted the contraction of the corporate limits of municipalities located partly in one county and partly in another, even though the act, at the time of its enactment, applied only to the town of Falls Church.

In *Gandy* v. *Elizabeth City County*, *supra*, we held valid and constitutional a statute which provided that the board of supervisors of a county adjoining or abutting any city within or without the State having a population of 125,000 or more, as shown by the most recent United States census, and the board of supervisors of a county adjoining any county which adjoins or abuts any such city and having a density of population of 500 or more to the square mile-shall have the same power and authority as are vested in the councils of cities and towns by the Constitution and laws of this State. There Mr. Justice Holt, later Chief Justice of this court, at pages 344 and 345, said:

"A law is general though it may immediately affect a small number of persons, places or things, provided, under named conditions and circumstances, it operates alike on all who measure up to its requirements.

\*    \*    \*    \*    \*    \*

"This act applies not only to Elizabeth City county but to all other counties which measure up to its requirements. It is a general law and must be read in connection with other cognate general statutes."

The same principles are applied in other States. In the case of *State* v. *Pugh*, 43 Ohio St. 98, 1 N. E. 439, decided in 1885, it was said:

"It is not to be urged against legislation, general in form, concerning cities of a designated class and grade, that but one city in the state is within the particular classification at

the time of its enactment. Nor is it fatal to the act in question that the belief or intent of the individual members of the General Assembly who voted for the act was that it should apply only to a particular city. Neither would it subject the act to the imputation that it was local and special."

See also, *In re City of Pittsburg*, 217 Pa. 227, 66 A. 348, (affirmed 207 U. S. 161, 28 S. Ct. 40, 52 L. ed. 151); *State v. Darling*, 216 Iowa 553, 246 N. W. 390, 88 A. L. R. 218; *Kates v. Reading*, 254 Mich. 158, 235 N. W. 881; and *Hunt v. Rosenbaum Grain Corp.*, 355 Ill. 504, 189 N. E. 907.

The city relies upon *Henrico County* v. *Richmond*, 106 Va. 282, 290, 55 S. E. 683, 117 Am. St. Rep. 1001, as holding that it is impossible for the legislature to pass a general law specifying how much the limits of a city or town can be increased or diminished. We do not so construe the holding in that case. There the court pointed out that while the legislature had prior to the Constitution of 1902 the power to pass special statutes for the enlargement of cities and towns, that power had been taken away by section 126 of that Constitution. Thereafter it became necessary for the legislature to select and designate the courts to exercise a judgment on the facts of each case. In accordance therewith, the legislature enacted the provisions now known as Virginia Code, 1942, (Michie), sections 2956 to 2971 (1), providing the procedure, conditions, and limitations under which the courts are empowered to act.

Section 126 of the Constitution in no wise inhibits the General Assembly from prescribing by general law the maximum or minimum number of square miles which, for social, political, or economic reasons, it may deem proper to be embraced in any county. In the absence of restraint, as we have heretofore said, the legislature has full power to exercise its wisdom and discretion, within reasonable limits. In other words, it became the duty of the legislature to determine the procedure and conditions for annexation of territory by a city and to provide the courts with jurisdiction to determine the issue. In turn, it becomes the duty

of the courts to comply with the terms and procedure set out, so long as they conform to constitutional limitations.

The city further cites, in support of its contention that the 1938 Act is unconstitutional, the cases of *Farmer* v. *Christian*, 154 Va. 48, 152 S. E. 382; *Quesinberry* v. *Hull*, 159 Va. 270, 165 S. E. 382; and *Shulman Co.* v. *Sawyer*, 167 Va. 386, 189 S. E. 344.

In *Farmer* v. *Christian*, *supra*, we held unconstitutional a statute which provided that upon the trial of a prohibition officer for an offense committed in the performance of his duties, the accused could, under certain circumstances, obtain a change of venue; and that since there was no reasonable basis for placing prohibition agents in a different category from other citizens of the State, the classification was arbitrary and unreasonable, and rendered the law a special act.

In *Quesinberry* v. *Hull*, *supra*, we held invalid an act which exempted Carroll county by name from the general law having to do wtih the selection of trial justices. The act involved an unreasonable and arbitrary classification, which rendered it a special act.

In both of these cases the Acts were invalid on their faces. They have no bearing on the issues involved in the present case, since the Act of 1938, on its face, applies to every city, town, and county in the Commonwealth.

In *Shulman Co.* v. *Sawyer*, *supra*, we held that an exemption in an act involving an unreasonable and arbitrary classification rendered the entire act invalid. The statute there authorized proceedings to be brought in trial justice courts by notice of motion except in the city of Norfolk, which though not referred to by name, was defined by stating maximum and minimum population limits, according to the census of 1930 only. The exception was without justification and was applicable, at the time of its enactment, and forever afterwards, only to Norfolk.

Upon the whole case we are of opinion that the Act of

1938 was a valid exercise of legislative power. This being true, the wisdom of its enactment is not subject to judicial review. As a consequence, we are of opinion that the judgment of the trial court should be affirmed.

*Affirmed.*